**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey NJ 07039
(973) 597-9100
Jay L. Lubetkin
*Counsel to Debtor/Debtor-in-Possession,*
*Camp Harmony, Inc.*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>CAMP HARMONY, INC.,<br><br>            Debtor. | Case No. 19-<br><br>Chapter 11 |
| CAMP HARMONY, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>CROWN BANK and CROWN REAL ESTATE<br>HOLDINGS, INC.,<br><br>            Defendants. | Adv. Pro. No. 19- |

### ADVERSARY PROCEEDING COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF PRECLUDING EVICTION OF CAMP HARMONY, INC., AND FOR OTHER RELATED RELIEF

Camp Harmony, Inc., debtor/debtor-in-possession, (the "Debtor"), a corporation of the State of New Jersey having its principal place of business at 206 Mt. Horeb Road, Warren, New Jersey, by and through its attorneys, Rabinowitz, Lubetkin & Tully, LLC, by way of Verified Complaint against Crown Bank and Crown Real Estate Holdings, Inc., (collectively, "Crown"), respectfully shows and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this proceeding in accordance with 28 U.S.C. §§ 157 and 1334(b).  Venue is properly laid in this district pursuant to 28 U.S.C. § 1409(a).

2.     This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(G), (F) and (O).  The applicable statutory basis for the claims asserted herein includes, but is not limited to, 11 U.S.C. §§§ 362(a), 541(a) and 105 of the United States Bankruptcy Code (the "Code").

## GENERAL ALLEGATIONS AND BACKGROUND

1.     On March 15, 2019, the Debtor filed a Voluntary Petition for relief pursuant to the provisions of Chapter 11 of the Code.

2.     Simultaneous with the filing of the Debtor's Voluntary Petition, an affiliate of the Debtor, The Orchard Academy, LLC, also filed a Voluntary Petition pursuant to the provisions of the Code.

3.     No trustee has been appointed in the Debtor's bankruptcy proceeding or in Orchard's bankruptcy proceeding, and no official committee of unsecured creditors has been appointed in the Debtor's bankruptcy case or the Orchard bankruptcy case to date.

4.     The Debtor and Orchard continue to manage their affairs and operate their businesses as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

5.     The Debtor and certain of its non-debtor affiliates were previously owners of parcels of real property located at, *inter alia*, 5 Harmony Road, 11 Harmony Road, 13 Harmony Road, 15 Harmony Road, 19 Harmony Road and 25 Harmony Road, Warren, New Jersey (the

"Property"). The address otherwise applicable to the Property is 206 Mt. Horeb Road, Warren, New Jersey.

6. The Property is where the Debtor and Orchard operate their businesses.

7. The Property is also the full-time residence of an operating director of the Debtor, Joshua Greenbaum, and his wife and two young daughters, one age 3 and one 4 months old, and houses two other full-time residents.

8. The Debtor owns and operates New Jersey's premier summer camp, an institution since 1926, and purchased by Jerry Amedeo in 1976.

9. The camp runs an eight (8) week summer program for children ages 2 to 15, and typically enrolls more than three hundred (300) campers.

10. This season's camp program begins on June 24, 2019 and ends on August 16, 2019. Approximately two hundred thirteen (213) campers are already contracted for attendance at Camp Harmony this summer, whose parents have paid in the aggregate more than $600,000 in deposits.

11. The Debtor's affiliate, Orchard, is a pre-school program operating on the Property that services approximately one hundred twenty five (125) students ages 3 months through 5 years, and employs approximately thirty (30) people.

12. In its capacity as a historical title owner of the Property, the Debtor was an obligor under a mortgage encumbering the Property in favor of Crown.

13. On or about December 20, 2017, Crown obtained a judgment in a foreclosure action entitled Crown Bank vs. Camp Harmony, Inc., et al., constituting Docket No. F-002733-17 in the Superior Court of Somerset County, Chancery Division, (the "Foreclosure Action").

14. On May 15, 2018, Crown was the successful bidder at a sheriff's sale for the Property.

15.    Crown subsequently executed an Assignment of Bid from Crown Bank to Crown Real Estate Holdings, Inc., and on June 21, 2018, a Sheriff's Deed evidencing the transfer of title for the Property into Crown was recorded in the Somerset County Clerk's Office.

16.    On or about January 28, 2019, Crown's attorneys, in the Foreclosure Action, filed a Certification in Support of the Issuance of a Writ of Possession. A copy of the Certification is attached hereto as Exhibit "A."

17.    That Certification sought the entry of a Writ of Possession in order to evict the former title owners from possession of the Property.

18.    The Certification implied the former title owners continued in possession of the Property after the entry of the foreclosure judgment, the sheriff's sale, and the recording of the title in Crown, without the existence of any subsequently granted occupancy rights by Crown to, *inter alia*, the Debtor.

19.    However, on May 16, 2018, Crown and the Debtor, together with the other former title owners, executed a Forbearance Use and Occupancy Agreement, (the "U&O Agreement") by which Crown agreed to forbear from ejecting the former title owners from the Property, including the Debtor, and agreed to allow the Debtor to occupy the Property pursuant to the terms and conditions set forth therein through September 30, 2018. A copy of that U&O Agreement is attached as Exhibit "B."

20.    Pursuant to the U&O Agreement, Crown held a $50,000 security deposit which exceeds substantially any alleged payment defaults under that agreement.

21.    In prior discussions between the Debtor and Crown, it was agreed that the security deposit would be applied to the rent due Crown for the September 2018 time period governed by the U&O Agreement.

22.     At all times from and after at least 2015, the Property was also occupied by Orchard.

23.     The Property is also occupied as the full-time residential home of Mr. Greenbaum and his family, and two other independent full-time residents.

24.     At no time was the Foreclosure Action ever amended to include Orchard as a defendant.

25.     At no time was the Foreclosure Action ever amended to include Mr. Greenbaum and his family as defendants.

26.     At no time was the Foreclosure Action ever amended to include the other full-time residents as defendants.

27.     At no time was the Foreclosure Action ever amended to include Crown Real Estate Holdings, Inc. as a plaintiff.

28.     Prior to expiration of the term of the U&O Agreement, the Debtor and Crown verbally agreed to the long-term leasing of the Property by the Debtor.

29.     In reliance on that verbal agreement, the Debtor paid to Crown $40,000 constituting the rent governing the period of October 2018, a time period after the expiration of the U&O Agreement.  A copy of that check, which has a mistaken designation of "September 2018" in the memo field, is attached hereto as Exhibit "C."  Based upon the agreement between Crown and the Debtor to apply the existing security deposit under the U&O Agreement to September's rent due thereunder, the only obligation to which the $40,000 September payment can apply is to the rent due for October under the long-term lease agreement.

30.     A copy of the long-term lease agreement (the "Lease") in unexecuted form is attached hereto as Exhibit "D."

31.    Crown negotiated the check provided by the Debtor governing its occupancy of the Property for the period of October 2018 under the Lease.

32.    Crown confirmed in writing the occupancy rights of the Debtor pursuant to the terms and conditions of the Lease in a November 6, 2018 letter to the Debtor, in which Crown (wrongfully) asserted rent for the period of October 2018 was then due, and rent for the month of November 2018 would be due shortly thereafter.  A copy of that letter is attached hereto as Exhibit "E."

33.    Such correspondence constitutes a signed writing confirming the Debtor's occupancy rights pursuant to the provisions of the Lease.

## COUNT I

34.    The Debtor repeats and realleges each allegation contained above as if set forth at length herein.

35.    The Debtor occupies the Property pursuant to the Lease.

36.    Such Lease and the Debtor's possessory property rights thereunder constitute property of the Debtor's bankruptcy estate subject to the protections of the automatic stay.

37.    Because the Debtor has possessory rights pursuant to the provisions of the unexpired Lease, the exception to the automatic stay set forth in 11 U.S.C. § 362(b)(10) is not applicable to this matter.

38.    In the absence of the entry of a temporary restraining order prohibiting the eviction of the Debtor from the Property, the Debtor (and Orchard, the Joshua Greenbaum Family, and the other two occupants) will be evicted from the Property at 10:00 a.m. on Monday, March 18, 2019, pursuant to the provisions of a Writ of Possession obtained by Crown, and

obtained in contravention of the protections to which the Debtor and the other occupants are entitled under state law. A copy of the Writ of Possession is attached hereto as Exhibit "F."

39.    The appropriate procedure for the issuance of a Writ of Possession against a tenant in possession pursuant to a lease agreement, as is the case vis-à-vis the Debtor, Orchard, and the other occupants is (1) the filing of an eviction action in the small claims part, landlord/tenant division of the Superior Court in the County in which the premises lie, in which the landlord seeks a judgment of possession N.J.S.A. 2A:18-53, R. 6:1-3(a); (2) the entry of a judgment of possession; (3) the issuance of a warrant of removal at least three days after entry of the judgment of possession; and (4) the service of the warrant of removal at least three days after the issuance of the warrant. See, N.J.S.A. 2A:18-57.

40.    Under applicable state law there are further protections granted to residential tenants facing eviction, none of which have been applied to Mr. Greenbaum and his family, or the other two full-time residents. See, N.J.S.A. 2A:18-61.1.

41.    In any eviction action, the defendant is entitled to apply to the Superior Court to have the matter transferred from the special civil part, landlord/tenant division, in order to have a trial by jury. See, N.J.S.A. 2A:18-60.

42.    None of the usual and customary procedures were applied in connection with Crown's mere filing of the Certification, which resulted in the issuance of the Writ of Possession without the entry of a judgment of eviction, without an opportunity to defend or be heard by Orchard, without an opportunity to defend or be heard by Mr. Greenbaum and his family, and without an opportunity to defend or be heard by the other residents.

43.     As is evidenced by a review of Exhibit "F," the Writ is witnessed by Judge Goodzeit of the Superior Court, Chancery Division, and is signed by the Clerk of the Court. No judgment of possession was entered by the Court.

44.     The Certification filed by Crown which resulted in the Writ of Possession was filed in the Foreclosure Action in which the then existing title holder, Crown Real Estate Holdings Inc., was not substituted in as a party plaintiff.

45.     At least four parties in possession of the Property, Orchard, Joshua Greenbaum's family, and two other full-time residents were never named as defendants in the Foreclosure Action. Neither the Debtor nor Orchard nor the Joshua Greenbaum family nor the other full-time residents were ever made defendants in any separate eviction proceeding.

46.     The Certification submitted to the Chancery Division by Crown fails to reference either the U&O Agreement by which the Debtor was entitled to lawful possession of the Property after a foreclosure judgment and sheriff's sale, or the subsequent Lease, by which the Debtor obtained occupancy rights effective October 1, 2018 through current time.

47.     As a result of the foregoing, the Debtor has established a reasonable probability of success on the merits of its claims that (1) it occupies the Property pursuant to the Lease; and (2) the Lease is not a commercial lease whose term has expired.

48.     Thus, the Lease is an asset whose underlying possessory rights are subject to the protections of the automatic stay.

49.     Upon information and belief, the Debtor submits Crown has no purchaser for the Property in prospect, such that confirming the Lease and the Debtor's possessory rights are estate property subject to the automatic stay and affording the Debtor the one hundred twenty (120) day

time period within which to decide to assume or reject the Lease, will cause no significant harm to Crown.

50.     The harm to the Debtor, Orchard, the Joshua Greenbaum family, and the other full-time residents associated with an immediate eviction from the Property will be devastating, as it effectively will put the Debtor and Orchard out of business, will leave the more than two hundred (200) families who have signed up for Camp Harmony for this summer's camp season and who have made more than $600,000 in advance payments on account of that expectation, with no recovery and no summer programming for their children, and will result in a practical inability of the Debtor to reorganize its financial affairs or to return any dividend to creditors. Such will also render the Greenbaum family, including his two children under the age of 4, homeless. Immediate eviction will also displace approximately one hundred twenty five (125) young children being educated and cared for by Orchard, and will cause havoc to the families that rely on Orchard for childcare and education services performed by Orchard's approximate thirty (30) employees.

51.     Such constitutes immediate and irreparable injury to the Debtor, Orchard, and others.

52.     As concerns the public interest, providing the Debtor with the protections of the automatic stay to which it is entitled (1) will respect the provisions of the Bankruptcy Code; (2) promote the reorganization provisions inherent in good faith Chapter 11 filings; (3) provide the Debtor with the one hundred twenty (120) day statutory time period within which to assume or reject the Lease; (4) will provide the Debtor's affiliate, Orchard the ability to conclude its school year for the approximate one hundred twenty five (125) young students who attend pre-school at the Property; (5) will enable the Debtor to complete its obligations to the more than three

hundred (300) campers who look forward to the upcoming summer season at Camp Harmony;

(6) will allow the Debtor and Orchard to pursue reorganization of their financial affairs; (7) will

continue the employment of the approximate thirty (30) employees of Orchard, and the

approximate seven (7) full-time employees of the Debtor; and (8) will allow all such benefits to

occur without causing any meaningful detriment to Crown, a foreclosing bank lender.

      **WHEREFORE,** the Debtor respectfully requests:

          (a)    entry of a temporary restraining order prohibiting Crown from enforcing the Writ of Possession respecting the Debtor's Property;

          (b)    entry of a preliminary injunction prohibiting Crown from enforcing the Writ of Possession respecting the Debtor's Property; and

          (c)    for such other and further relief as the Court deems just and equitable.

## COUNT II

    53.    The Debtor repeats and realleges each allegation contained above as if set forth at

length herein.

    54.    By the within Count, the Debtor seeks the entry of an Order deeming its

occupancy rights to the Property to be pursuant to the Lease which is attached hereto as Exhibit

"D," and which Lease is in full force and effect as of the commencement of the within

bankruptcy proceeding..

      **WHEREFORE,** the Debtor respectfully requests:

          (a)    entry of an Order declaring the Lease attached hereto as Exhibit "D" to govern the terms and conditions respecting the Debtor's occupancy of the Property, to be in full force and effect as of the commencement of the within bankruptcy proceeding and subject to the protections of 11 U.S.C. § 362(a); and

          (b)    for such other and further relief as the Court deems just and equitable.

**RABINOWITZ, LUBETKIN & TULLY, LLC**
*Counsel to Debtor/Debtor-in-Possession,*
*Camp Harmony, Inc.*

By: _____
                    JAY L. LUBETKIN

Dated: March 15, 2019

## VERIFICATION

Jerry Amedeo, of full age, certifies as follows:

1.     I am the President, sole director, and majority shareholder of Camp Harmony, Inc., debtor/debtor-in-possession, (the "Debtor"), and I am authorized to execute this Verification on behalf of the Debtor.  I have full knowledge of the facts set forth herein, except where such facts are alleged upon information and belief.

2.     I have read the Verified Complaint and certify that the statements contained therein are true based upon my personal knowledge, information and belief.

3.     I am aware that if any of the factual statements contained in the Verified Complaint are willfully false, I am subject to punishment.

Dated:  March 15, 2019

F:\Client_Files\A-M\Camp Harmony\AdversaryComplaint.doc

# EXHIBIT A

Sean D. Adams, Esq. Bar Id No 004932013
HILL WALLACK LLP
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
(609) 924-0808
Attorneys for assignee, Crown Real Estate Holdings, Inc.

| | |
|---|---|
| CROWN BANK,<br><br>       Plaintiff,<br><br>vs.<br><br>J&C Capital, L.L,C., JJC Capital, L.L.C. and School Realty, L.L.C., and Camp Harmony, Inc.,<br><br>       Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>SOMERSET COUNTY<br><br>DOCKET NO. F-002733-17<br><br>CERTIFICATION IN SUPPORT OF THE ISSUANCE OF A WRIT OF POSSESSION |

I, Sean D. Adams, being of full age, hereby certify as follows:

1.     I am an attorney-at-law of the State of New Jersey and an associate with the law firm of Hill Wallack LLP, attorneys for Crown Real Estate Holdings, Inc. ("Crown Real Estate"). As such, I am personally familiar with the facts set forth herein and am authorized to make this Certification on behalf of Crown Real Estate.

2.     This Certification is submitted in support of the request for the issuance of a Writ of Possession with respect to real property known as: 5 Harmony Road, Warren, NJ 07059, 11 Harmony Road, Warren, NJ 07059m 13 Harmony Road, Warren, NJ 07059, 15 Harmony Road, Warren, NJ 07059, 19 Harmony Road, Warren, NJ 07059, and 25 Harmony Road, Warren, NJ 07059 (collectively the "Property").

3.     On February 2, 2017, Crown Bank instituted the within foreclosure proceeding against J&C Capital, L.L.C. ("J&C"), JJC Capital, L.L.C. ("JJC"), School Realty, L.L.C. ("School Realty"), and Camp Harmony, Inc. ("Camp Harmony")(collectively "Defendants").

4.    On February 21, 2017, Crown Bank recorded a Notice of Lis Pendens in connection with the foreclosure of the Property. A copy of the Lis Pendens is attached hereto and made a part hereof as Exhibit "A".

5.    On December 20, 2017, a Final Judgment for Foreclosure was entered in this case. Copies of the Final Judgment, and Writ of Execution, are attached hereto and made a part hereof as Exhibit "B" and "C" collectively.

6.    On May 15, 2018, the plaintiff, Crown Bank was the successful bidder at the Sheriff's sale for the Property.

7.    Crown Bank executed an Assignment of Bid from Crown Bank to Crown Real Estate with respect to the Property.

8.    The Sheriff's Deed into Crown Real Estate was issued on June 21, 2018 and was recorded by the Somerset County Clerk on August 1, 2018 in Book 7060 at Page 3274&c. A copy of the recorded Sheriff's Deed is attached hereto and made a part hereof as Exhibit "D".

9.    The Writ of Possession is to be served upon J&C Capital, L.L.C., JJC Capital, L.L.C., School Realty, L.L.C., and Camp Harmony, Inc., and their successors, assignees, and employees.

10.    J&C Capital, L.L.C., JJC Capital, L.L.C., School Realty, L.L.C., and Camp Harmony, Inc. are not protected by the provisions of the anti-eviction statute, as enunciated in the N.J. Supreme Court case of Chase Manhattan Bank v. Josephson, because J&C Capital, L.L.C., JJC Capital, L.L.C., School Realty, L.L.C., and Camp Harmony, Inc. are the borrowers,

and the protections enunciated in <u>Chase Manhattan Bank v. Josephson</u> apply to tenants of property.

11.    As such, Crown Real Estate is entitled to the issuance of a Writ of Possession.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Sean D. Adams

Dated: January 28 , 2019

SWC-F-002733-17   01/28/2019 3:37:37 PM  Pg 4 of 49 Trans ID: CHC201946296

# EXHIBIT "A"



Mark A. Roney, Esq./012622001
HILL WALLACK LLP
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
(609) 924-0808
Attorneys for Plaintiff
Crown Bank
Our File No. 13530-194/smi

Crown Bank,

             Plaintiff,

vs.

J. & C Capital, L.L.C.;
JJC Capital, L.L.C.;
School Realty, L.L.C.;
Camp Harmony, Inc.;

             Defendants.

Superior Court of New Jersey
Chancery Division
Somerset County

Docket No. F-002733-17

Civil Action

Notice of Lis Pendens

Notice is hereby given of the commencement and pendency of a suit in the Superior
Court of the State of New Jersey, Chancery Division, entitled as above, the general premise of
which is to foreclose a first mortgage covering the property hereinafter described, made by
School Realty, L.L.C. dated August 6, 2014 and recorded in the Office of the Clerk of
Mortgages of Somerset County on, August 11, 2014 in Book 6734 of Mortgages for said
County, at Page 3624&c and to foreclose a mortgage made by J. & C Capital, L.L.C. dated
August 6, 2014 and recorded in the Office of the Clerk of Mortgages of Somerset County on,
August 11, 2014 in Book 6734 of Mortgages for said County, at Page 3642&c and to foreclose a
mortgage by JJC Capital, L.L.C. dated August 6, 2014 and recorded in the Office of the Clerk

Record and Return to:
Fortune Title Agency Inc.
39 Woodland Road
Roseland, NJ 07068

2014029523

of Mortgages of Somerset County on, August 11, 2014 in Book 6734 of Mortgages for said

County, at Page 3660 &c and of which Plaintiff is now the holder and to recover possession of

the lands and premises, the property to be affected by the suit being described in Schedule "A"

attached hereto and to sell Crown Bank's personal property collateral being described in

Schedule "B" attached hereto.

    THE COMPLAINT in the above-captioned matter was filed in the Office of the Clerk of

Superior Court on February 2, 2017.

HILL WALLACK LLP
Attorneys for the Plaintiff

Prepared by:
Mark A. Roney, Esq.

Dated: February 14, 2017

2.

## SCHEDULE A

### 6 Harmony Road

**AS TO BLOCK 11, LOT 64:**

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Municipality of the Township of Warren, in the County of Somerset, State of New Jersey.

BEING SHOWN AND DESIGNATED as Lot 4 in Block 11 as shown on a certain map entitled "Map of Primary Owned by the Illuminata Corporation, Chery Association, Inc., in the Township of Warren, Somerset County, New Jersey" and filed in the Somerset County Clerk's Office as Map 1401A as No. 17-C.

NOTE: Being Lot 64, Block 711, Tax Map of the Township of Warren, County of Somerset, State of New Jersey.

NOTE: Lot and Block shown for informational purposes only.

.17.

SWC-F-002733-17   01/28/2019 3:37:37 PM   Pg 8 of 49 Trans ID: CHC201946296

## SCHEDULE A (cont'd)

11 Haraamy Road and 13 Haraamy Road

THE LAND REFERRED TO HEREIN, BELOW IS SITUATED IN THE COUNTY OF SOMERSET, STATE OF NEW
JERSEY, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT, PARCEL AND LOT OF LAND LYING AND BEING SITUATE IN THE TOWNSHIP OF
WARREN, COUNTY OF SOMERSET, STATE OF NEW JERSEY, BEING MORE PARTICULARLY DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF NO. ROAD, SAID POINT BEING DISTANT
100.00 FEET WESTERLY FROM ITS INTERSECTION WITH THE WESTERLY LINE OF HANORIA AVENUE; AND
FROM SAID POINT RUNNING THENCE

1.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOT 23, BLOCK
121, TAX LOT, N/F SMITH AND JONES APRIL, 200.00 FEET TO A POINT; THENCE

2.   SOUTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE SOUTHERLY LINE OF LOT 23,
BLOCK 121, N/F SMITH, 100.00 FEET TO A POINT IN THE WESTERLY LINE OF HANORIA AVENUE;
THENCE

3.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HANORIA
AVENUE, 100.00 FEET TO A POINT; THENCE

4.   SOUTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE NORTHERLY LINE OF LOT 21,
BLOCK 121, N/F TOWNSHIP OF WARREN, 100.00 FEET TO A POINT; THENCE

5.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOTS 21 AND
20, BLOCK 121, N/F TOWNSHIP OF SANTA AND EDWARD SCHILLINGER, 200.00 FEET TO A POINT;
THENCE

6.   SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERLY LINE OF LOT 20,
BLOCK 121, N/F REMAINDER, 200.00 FEET TO A POINT IN THE WESTERLY LINE OF HANORIA
AVENUE; THENCE

7.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HANORIA
AVENUE, 25.67 FEET TO A POINT; THENCE

8.   SOUTHERLY ALONG THE WESTERLY LINE OF HANORIA AVENUE ALONG A CURVE TO THE RIGHT ALONG
HAVING A RADIUS OF 475.20 FEET, AN ARC DISTANCE OF 26.55 FEET TO A POINT; THENCE

9.   SOUTH 12 DEGREES 40 MINUTES 00 SECONDS WEST, STILL ALONG THE WESTERLY LINE OF
HANORIA AVENUE, 174.84 FEET TO A POINT; THENCE

10.   SOUTH 69 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE SOUTHERLY LINE OF LOT 18,

### SCHEDULE A (cont'd)

BLOCK 331, 289.00 FEET TO A POINT; THENCE

11. NORTH 04 DEGREES 36 MINUTES 25 SECONDS EAST, 532.14 FEET TO A (boundary); THENCE

12. NORTH 04 DEGREE 16 MINUTES 25 SECONDS EAST, 375.76 FEET TO A POINT; THENCE

13. NORTH 84 DEGREES 46 MINUTES 41 SECONDS WEST, AND ALONG A CONCRETE (communication), 174.01 FEET TO A POINT IN THE (point) BOUNDARY LINE OF MT. NORTH ROAD; THENCE

14. EASTERLY ALONG THE (point) BOUNDARY LINE OF MT. HOPE ROAD, ALONG A CURVE TO THE RIGHT WITH A RADIUS OF 133.31 FEET, AN ARC DISTANCE OF 211.37 FEET TO A POINT; THENCE

16. STILL ALONG THE (point) BOUNDARY LINE OF MT. HOPE ROAD, BEING DISTANT 40 FEET FROM THE CENTER LINE THEREOF, ON A CURVE BEARING SOUTH 26 DEGREES 34 SECONDS EAST, 282.17 FEET TO A POINT, SAID POINT BEING THE POINT AND PLACE OF BEGINNING.

EXCEPTING THEREFROM THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF MORRIS AS A PERPETUAL EASEMENT FOR A PARKING AREA AS GRANTED BY DEED FROM (location) CORPORATION AND (name) STEINBERG, HIS WIFE, DATED MAY 16, 1988, RECORDED JUNE 13, 1988, IN DEED BOOK 3417, PAGE 130, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON BAR IN THE SOUTHERLY LINE OF MOUNT HOPE ROAD, 30 FEET FROM CENTER LINE OF THE EXISTING ROAD; WHICH LIES FOR THE REFERENCE OF MT. HOPE ROAD; RUNNING BY VARIANT (1) THENCE; TOGETHER THEREIN, ALONG PRESENT, 4330, SAID IRON BEING LOCATED; VARIANT 2, RUNNING ALONG WITH SOUTHERLY LINE OF MOUNT HOPE ROAD; FROM THE SOUTHERLY 300.00 FEET AS MEASURED ALONG THE SOUTHERLY LINE OF EMMETTS AVENUE (10 FEET WIDE), SAID BEGINNING POINT; INTERSECTION WITH THE WESTERLY LINE OF EMMETTS AVENUE, OR FRONTAGE OF EMMETTS OR SIDE POINT; ALSO BEING THE NORTHEASTERLY CORNER TO LANDS NOW OR FORMERLY OF STEINBERG; THENCE.

EXTENSION AND FROM SAID POINT OF BEGINNING RUNNING THENCE;

1. ALONG THE NORTHEASTERLY LINE OF FREEDMAN, SOUTH 05 DEGREES 22 SECONDS EAST, 10.10 FEET TO A POINT; THENCE

2. ALONG A LINE 30 FEET PARALLEL WITH AND ADJACENT TO THE CENTER LINE OF MOUNT HOPE ROAD, AS PER THE ABOVE MENTIONED MAP, SAID LINE BEING THE NEW SOUTHERLY LINE OF MOUNT HOPE ROAD, NORTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, 316.25 FEET TO A POINT OF CURVE; THENCE

3. STILL ALONG AND ON A WESTERLY DIRECTION ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 333.17 FEET, AN ARC LENGTH OF 111.36 FEET TO A POINT IN THE EASTERLY LINE OF LANDS NOW OR FORMERLY OF STEINBERG; THENCE

4. ALONG SAID EASTERLY LINE, NORTH 21 DEGREES 42 MINUTES 17 SECONDS WEST, 19.89 FEET TO AN IRON BAR AND CORNER TO LANDS OF STEINBERG, SAID CORNER BEING 20 FEET FROM THE CENTER LINE OF MOUNT HOPE ROAD; THENCE

5. ALONG A LINE 20 FEET PARALLEL WITH THE AND ADJACENT TO THE CENTER LINE OF MOUNT HOPE ROAD, SAID LINE BEING THE OLD SOUTHERLY LINE OF MOUNT HOPE ROAD, SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, AND RIGHT OF EXTENSION ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 333.17 FEET, AN ARC LENGTH OF 112.11 FEET TO THE END OF A (curve) THENCE;

6. STILL ALONG THE SAME, SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, 316.25 FEET TO THE

-19-

SWC-F-002733-17   01/28/2019 3:37:37 PM   Pg 10 of 49 Trans ID: CHC201946296

## SCHEDULE A (cont'd)

## SCHEDULE A (cont'd)

SWC-F-002733-17   01/28/2019 3:37:37 PM  Pg 12 of 49 Trans ID: CHC201946296

### SCHEDULE A (cont'd)

### 15 Harmony Road

## SCHEDULE A (cont'd)

### 19 Harmony Road and 25 Harmony Road

ALL that certain lot, tract or parcel of land and premises, hereinafter particularly described, situate, lying and being in the Township of Warren in the County of Somerset and the State of New Jersey, more particularly described herein.

FIRST TRACT:   BEING KNOWN AND DESIGNATED AS lots 16, 17 & 18 as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

SECOND TRACT:   BEING KNOWN AND DESIGNATED AS Lot  19 IN Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

THIRD TRACT:   BEING KNOWN AND DESIGNATED AS Lot. 14 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

FOURTH TRACT:   BEING KNOWN AND DESIGNATED AS Lot  13 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

Being known and designated as Lot(s) 60  & 60.01 in Block 71 on the Township of Warren Tax Map.

-23-

## SCHEDULE B

Limited to tangible property located on the premises known as 5 Harmony Road, Warren, NJ 07059, 11 Harmony Road, Warren, NJ 07059, 13 Harmony Road, Warren, NJ 07059, 15 Harmony Road, Warren, NJ 07059, 19 Harmony Road, Warren, NJ, and 25 Harmony Road, Warren NJ 07059 also known as Lots 60, 60.01, 62.02, 64, 66, and 66.01 Block 71 on the Official Tax Map of the Township of Warren, County of Somerset, State of New Jersey.

-24-



BRETT A. RADI
SOMERSET COUNTY CLERK
20 GROVE STREET
P.O. BOX 3000
SOMERVILLE, NJ 08876-1262

Recorded:      02/21/2017 12:40:26 PM
Book:          OPR    6943  Page: 742-752
Instrument No.: 2017007901
               LPF   11 PGS   $60.00

MULTIPLE NOTINGS:    $20.00

Recorder:    DELUCIA

## DO NOT DISCARD



2017007901

# EXHIBIT "B"

Mark A. Roney, Esq./0012622001
HILL WALLACK LLP
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
(609) 924-0808
Attorneys for Plaintiff,
Crown Bank
Our File No. 13530-194/sm1

| | |
|---|---|
| Crown Bank,<br><br>           Plaintiff,<br><br>vs.<br><br>J & C Capital, L.L.C., et al.,<br><br>           Defendants. | Superior Court of New Jersey<br>Chancery Division<br>Somerset County<br><br>Docket No. F-002733-17<br><br>Civil Action<br><br><br>Final Judgment |

Upon application of the Plaintiff, Crown Bank, and it appearing that the default of all the defendants having been entered; and the Term Loan And Security Agreement, Commercial Mortgage Note, Mortgage and Security Agreement executed by J & C Capital, L.L.C. to Plaintiff, Mortgage and Security Agreement executed by JJC Capital, L.L.C. to Plaintiff, Mortgage and Security Agreement executed by School Realty, L.L.C. to Plaintiff (collectively referred to as the "Mortgages"), and the Commercial Assignment of Leases and Rents executed by each of J & C Capital, L.L.C., JJC Capital, L.L.C., and School Realty, L.L.C. to Plaintiff, having been presented and marked as Exhibits by the Court;

And, it appearing from the Certification filed herein that there is due to the Plaintiff the sum of $5,569,595.77 on its first mortgage described in the Complaint as of July 31, 2017,

together with lawful interest from and including July 31, 2017 on the total sum due, together

with costs of this action to be taxed, raised and paid out of the mortgaged premises in the

Complaint;

IT IS ON THIS 20th day of December 2017

ORDERED AND ADJUDGED, that the Plaintiff is entitled to have the sum of

$5,569,595.77, on its first mortgage described in the Complaint as of July 31, 2017, together

with lawful interest from and including July 31, 2017 on the total sum due, thereafter on total

sum due, together with costs of this suit to be taxed, including a counsel fee of

$7,500.00, raised and paid out of the mortgaged premises described in the Complaint; and it is

further

ORDERED AND ADJUDGED that the street address of the mortgaged premises

described in the mortgage made by JJC Capital, L.L.C. to the Plaintiff, on August 6, 2014, and

recorded in the Somerset County Clerk's Office on August 11, 2014, in Book 6734 at Page 3660,

be and same is hereby reformed to include a reference to the full street address of the mortgaged

premises, including 19 Harmony Road, Warren, Somerset County, New Jersey as if set forth

therein;

ORDERED AND ADJUDGED that in addition to the mortgaged premises, that certain

additional collateral pledged by J & C Capital, JJC Capital, LLC, School Realty, L.L.C., and to

Plaintiff, a description of which is hereto attached as Schedule A (the "Additional Collateral") be

sold to pay Plaintiff the sums owed as stated herein;

ORDERED AND ADJUDGED that so much of the said mortgaged premises, as will be

sufficient to raise and satisfy the said Mortgages, interest and costs of the Plaintiff, be sold and

## ONE RECOVERY ON THE UNDERLYING DEBT

that an execution does issue for that purpose, out of this Court, directed to the Sheriff of the County of Somerset, commanding him to make sale, according to law, of so much of the mortgaged premises as will be sufficient to satisfy the said Mortgages, interest and costs of the Plaintiff that he first pay out of the proceeds of the sale to the Plaintiff or its attorneys its debt, interest and costs;

And, that in case there is a surplus, the same shall be brought into this Court and deposited with the Clerk, subject to the order of this Court, that the said Sheriff make his report to this Court of the sale as required by the Rules of the Court; and it is further

ORDERED AND ADJUDGED that the Plaintiff or purchaser duly recover against the said defendants, the premises mentioned and described in the said Complaint with appurtenances and that a Writ of Possession issue thereon; and it is further

ORDERED AND ADJUDGED that all defendant(s) to this action and each of them stand absolutely debarred and foreclosed of and from all redemption of, in and to so much as the said mortgage premises shall be sold as aforesaid under this judgment except as provided by 28 U.S.C. § 2410.  And it is further ORDERED AND ADJUDGED that this judgment shall not affect the rights of any person protected by the New Jersey Tenant Anti-Eviction Act N.J.S.A. 2A:18-61.1, et seq.

/s/ Paul Innes, P.J.Ch

Respectfully Recommended
R. 1:34-6 OFFICE OF FORECLOSURE

## SCHEDULE A

Limited to tangible property located on the premises known as 5 Harmony Road, Warren, NJ 07059, 11 Harmony Road, Warren, NJ 07059, 13 Harmony Road, Warren, NJ 07059, 15 Harmony Road, Warren, NJ 07059, 19 Harmony Road, Warren, NJ, and 25 Harmony Road, Warren NJ 07059 also known as Lots 60, 60.01, 62.02, 64, 66, and 66.01 Block 71 on the Official Tax Map of the Township of Warren, County of Somerset, State of New Jersey.

# EXHIBIT "C"

Mark A. Roney, Esq./0012622001
HILL WALLACK LLP
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
(609) 924-0808
Attorneys for Plaintiff,
Crown Bank
Our File No. 13530-194/sm1

Crown Bank,

                    Plaintiff,

vs.

J & C Capital, L.L.C., et al.,

                    Defendant(s).

Superior Court of New Jersey
Chancery Division
Somerset County

Docket No. F-002733-17

Civil Action

Writ of Execution

## THE STATE OF NEW JERSEY
## TO THE SHERIFF OF THE COUNTY OF SOMERSET
## GREETING:

WHEREAS ON December 20, 2017 by a certain Judgment made in our Superior Court

of New Jersey, in a certain cause therein pending, wherein the Plaintiff, is Crown Bank, and the

following named party is the defendants:

      J & C Capital, L.L.C.;
      JJC Capital, L.L.C.;
      School Realty, L.L.C.; and,
      Camp Harmony, Inc.;

      It was ordered and adjudged that certain mortgaged premises with appurtenances in the

Complaint, in the said cause particularly set forth and described, that is to say:

The mortgaged premises are described as set forth upon the RIDER ANNEXED

HERETO AND MADE A PART HEREOF.

Together with all and singular rights, liberties, privileges, hereditaments and

appurtenances thereunto belonging or in anywise appertaining, and the reversion and remainders,

rents, issues and profits thereof, and also all the estate, right, title, interest, use, property, claim

and demand of the said defendant(s) or, in, to and out of the same, to pay and satisfy in the first

place unto the Plaintiff, Crown Bank, the sum of $5,569,595.77, being the principal and interest

secured by those certain and separate Mortgage and Security Agreements, each dated August 6,

2014, given by JJC Captial, L.L.C., J & C Capital, L.L.C., and School Realty, L.L.C., together

with lawful interest from and including July 31, 2017 on total sum due, until the same be paid

and satisfied and also the costs of the aforesaid Plaintiff with interest thereon;

And, for the purpose a Writ of Execution should issue, directed to the Sheriff of Somerset

County, commanding him to make sale as aforesaid real estate (Schedule A) together with the

Additional Collateral (Schedule B); and that the surplus money arising from such sale, if any

there be, should be brought into our said Court, subject to the further order of the said Court, as

by the judgment remaining as of record in our Superior Court of New Jersey, at Trenton, doth

and may be more fully appear; and whereas, the costs of the said Plaintiff have been duly taxed

at the following sum $8,425.00;

Therefore, you are hereby commanded that you cause a sale to be made of the premises

aforesaid, by selling so much of the same as may be needful and necessary for the purpose, the

said sum of $5,569,595.77 as of July 31, 2017, together with lawful interest from and including

July 31, 2017 and the same you do pay to the said Plaintiff, together with lawful interest

SWC-F-002733-17    01/28/2019 3:37:37 PM   Pg 24 of 49 Trans ID: CHC201946296
Recorded in the Office of the Superior Court Clerk   Pg 3 of 11   Writ #17042423

thereafter on total sum due, thereon as aforesaid, and the sum aforesaid to costs with interest

thereon;

And, that you have the surplus money, if any there be, before our Superior Court of New

Jersey, aforesaid, at Trenton, on the following date: within 30 days of sale, to abide the further

order of the said court, according to the Judgment aforesaid, and you are to make return at the

time and place aforesaid, by certificate under your hand, of the manner in which you have

executed this our Writ, together with this Writ.  If no sale, Writ returnable within 24 months in

accordance with R.4:59-1.

WITNESS, the Honorable Paul Innes, P.J.Ch. of the Superior Court of New Jersey, at

Trenton aforesaid, this 20th day of December 2017.

HILL WALLACK LLP
Attorneys for Plaintiff


By: /s/ Mark A. Roney
    Mark A. Roney

Michelle M. Smith
Clerk of Superior Court

## SCHEDULE A

### 5 Harmony Road

AS TO BLOCK 71, LOT 64:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Municipality of the Township of Warren, in the County of Somerset, State of New Jersey:

BEING KNOWN AND DESIGNATED as Lot 8 in Block 8 as shown on a certain map entitled "Map of Property Owned by the Harmonia Cooperative Colony Association, Inc., in the Township of Warren, Somerset County, New Jersey, July" filed in the Somerset County Clerk's Office on 04/10/1924 as Map No. 37-C.

NOTE: Being Lot(s) 64, Block: 71: Tax Map of the Township of Warren, County of Somerset, State of New Jersey.

NOTE: Lot and Block shown for informational purposes only.

## SCHEDULE A (cont'd)

### 11 Harmony Road and 13 Harmony Road

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SOMERSET, STATE OF NEW JERSEY, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT, PARCEL AND LOT OF LAND LYING AND BEING SITUATE IN THE TOWNSHIP OF WARREN, COUNTY OF SOMERSET, STATE OF NEW JERSEY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF MT. HOREB ROAD, SAID POINT BEING DISTANT 100.00 FEET WESTERLY FROM ITS INTERSECTION WITH THE WESTERLY LINE OF HARMONIA AVENUE AND FROM SAID POINT RUNNING THENCE:

1.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOT 53, BLOCK 321, TAX MAP, N/F ELLIOT AND IRITA EPNER, 200.00 FEET TO A POINT; THENCE

2.   SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERLY LINE OF LOT 53, BLOCK 321, N/F EPNER, 100.00 FEET TO A POINT IN THE WESTERLY LINE OF HARMONIA AVENUE, THENCE

3.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 100.00 FEET TO A POINT; THENCE

4.   NORTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE NORTHERLY LINE OF LOT 51, BLOCK 321, N/F TOWNSHIP OF WARREN, 200.00 FEET TO A POINT; THENCE

5.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOTS 51 AND 50, BLOCK 321, N/F TOWNSHIP OF WARREN AND EDWARD SCHUISINGER, 200.00 FEET TO A POINT; THENCE

6.   SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERLY LINE OF LOT 50, BLOCK 321, N/F SCHUISINGER, 200.00 FEET TO A POINT IN THE WESTERLY LINE OF HARMONIA AVENUE; THENCE

7.   SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 29.67 FEET TO A POINT; THENCE

8.   SOUTHERLY ALONG THE WESTERLY LINE OF HARMONIA AVENUE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 478.34 FEET, AN ARC DISTANCE OF 98.55 FEET TO A POINT; THENCE

9.   SOUTH 12 DEGREES 28 MINUTES 10 SECONDS WEST, STILL ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 172.94 FEET TO A POINT; THENCE

10.   NORTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE SOUTHERLY LINE OF LOT 48;

Case 19-01121-CMG   Doc 1   Filed 03/15/19   Entered 03/15/19 16:15:46   Desc Main
Document     Page 40 of 108

SWC-F-002733-17   01/28/2019 3:37:37 PM  Pg 27 of 49 Trans ID: CHC201946296
Recorded in the Office of the Superior Court Clerk   Pg 6 of 11   Writ #17042423

## SCHEDULE A (cont'd)

BLOCK 321, 569.00 FEET TO A POINT; THENCE

11. NORTH 01 DEGREES 51 MINUTES 19 SECONDS EAST, 919.14 FEET TO A MONUMENT, THENCE

12. NORTH 01 DEGREES 16 MINUTES 39 SECONDS EAST, 975.79 FEET TO A POINT; THENCE

13. NORTH 01 DEGREES 49 MINUTES 21 SECONDS WEST, AND ACROSS A CONCRETE MONUMENT FOUND, 174.70 FEET TO A POINT IN THE (FORMER) SOUTHERLY LINE OF MT. HOREB ROAD; THENCE

14. EASTERLY ALONG THE (FORMER) SOUTHERLY LINE OF MT. HOREB ROAD, ALONG A CURVE TO THE RIGHT WITH A RADIUS OF 335.37 FEET, AN ARC DISTANCE OF 113.37 FEET TO A POINT; THENCE

15. STILL ALONG THE (FORMER) SOUTHERLY LINE OF MT. HOREB ROAD, BEING DISTANT 20 FEET FROM THE CENTER LINE THEREOF, ON A COURSE BEARING SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, 186.51 FEET TO A POINT, SAID POINT BEING THE POINT AND PLACE OF BEGINNING.

EXCEPTING THEREFROM THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET AS A PERPETUAL EASEMENT FOR A PUBLIC ROAD, AS GRANTED BY DEED FROM LAWRENCE V. STEINBAUM AND AVON STEINBAUM, HIS WIFE, DATED MAY 10, 1989, RECORDED JUNE 11, 1989, IN DEED BOOK 1737, PAGE 170, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON BAR IN THE SOUTHERLY LINE OF MOUNT HOREB ROAD, 20 FEET FROM CENTER LINE AS PER COUNTY ROAD SYSTEM MAP FOR THE ACCEPTANCE OF MT. HOREB ROAD, PREPARED BY HERBERT L. PICKELL, TOWNSHIP ENGINEER, DATED FEBRUARY, 1958, SAID IRON BEING LOCATED WESTERLY 100.00 FEET AS MEASURED ALONG THE SOUTHERLY LINE OF MOUNT HOREB ROAD FROM ITS INTERSECTION WITH THE WESTERLY LINE OF HARMONIA AVENUE (40 FEET WIDE) SAID BEGINNING POINT ALSO BEING THE NORTHEASTERLY CORNER TO LANDS NOW OR FORMERLY OF LAWRENCE AND AVON STEINBAUM AND FROM SAID POINT OF BEGINNING; RUNNING THENCE

1. ALONG THE NORTHEASTERLY LINE OF LANDS OF STEINBAUM, SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, 10.00 FEET TO A POINT; THENCE

2. ALONG A LINE 10 FEET PARALLEL WITH AND ADJACENT TO THE CENTER LINE OF MOUNT HOREB ROAD, AS PER THE ABOVE REFERENCE MAP, SAID LINE BEING THE NEW SOUTHERLY SIDE LINE OF MOUNT HOREB ROAD, NORTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, 385.54 FEET TO A POINT OF CURVE; THENCE

3. STILL ALONG SAME, IN A WESTERLY DIRECTION ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 925.37 FEET, AN ARC LENGTH OF 113.54 FEET TO A POINT IN THE WESTERLY LINE OF LANDS NOW OR FORMERLY OF STEINBAUM; THENCE

4. ALONG SAID WESTERLY LINE, NORTH 01 DEGREES 49 MINUTES 25 SECONDS WEST, 10.03 FEET TO AN IRON BAR AND CORNER TO LANDS OF STEINBAUM, SAID CORNER BEING 20 FEET FROM THE CENTER LINE OF MOUNT HOREB ROAD; THENCE

5. ALONG A LINE 20 FEET PARALLEL WITH THE AND ADJACENT TO THE CENTER LINE OF MOUNT HOREB ROAD, SAID LINE BEING THE OLD SOUTHERLY LINE OF MOUNT HOREB ROAD, IN AN EASTERLY DIRECTION ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 935.37 FEET, AN ARC LENGTH OF 113.37 FEET TO THE END OF A CURVE; THENCE

6. STILL ALONG THE SAME, SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, 395.53 FEET TO THE

## SCHEDULE A (cont'd)

POINT AND PLACE OF BEGINNING.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET PURSUANT TO A QUITCLAIM DEED FROM HOME SCHOOL REALTY, L.L.C. DATED MAY 21, 2003 AND RECORDED JUNE 3, 2003, IN DEED BOOK 5379 AT PAGE 1865 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY SIDELINE OF MOUNT HOREB ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND THE DIVISION LINE BETWEEN LOTS 65 AND 66 IN BLOCK 71, DISTANT WESTERLY, ALONG SAID SOUTHERLY SIDELINE, 100 FEET FROM THE WESTERLY SIDELINE OF HARMONY ROAD (40 FOOT WIDE RIGHT OF WAY) AND RUNNING, THENCE,

1.  ALONG SAID SOUTHERLY SIDELINE, SOUTH 80 DEGREES 18 MINUTES 48 SECONDS WEST, 497.11 FEET TO THE WESTERLY LINE OF SAID LOT 66; THENCE,

2.  ALONG SAID WESTERLY LINE EXTENDED, NORTH 11 DEGREES 50 MINUTES 31 SECONDS WEST, 18.71 FEET TO THE CENTERLINE OF THE EXISTING TRAVELED WAY OF SAID MOUNT HOREB ROAD; THENCE,

3.  ALONG SAID CENTERLINE, AND ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 460.00 FEET, A CENTRAL ANGLE OF 09 DEGREES 56 MINUTES 01 SECONDS, AN ARC LENGTH OF 83.22 FEET AND A CHORD BEARING NORTH 75 DEGREES 40 MINUTES 47 SECONDS EAST, A CHORD DISTANCE OF 83.113 FEET TO A POINT OF TANGENCY; THENCE

4.  ALONG THE SAME, NORTH 80 DEGREES 38 MINUTES 48 SECONDS EAST 418.89 FEET TO THE EXTENSION OF THE AFORESAID DIVISION LINE BETWEEN LOTS 65 AND 66; THENCE,

5.  ALONG SAID DIVISION LINE EXTENDED, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 20.57 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 10,861 SQUARE FEET/0.2493 ACRES OF LAND AS DESCRIBED HEREIN.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET PURSUANT TO A DEED FROM HOME SCHOOL REALTY, L.L.C. DATED MAY 21, 2003 AND RECORDED JUNE 3, 2003 IN DEED BOOK 5379 AT PAGE 1855 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY SIDELINE OF MOUNT HOREB ROAD (VARIABLE WIDE RIGHT-OF-WAY) AND THE DIVISION LINE BETWEEN LOTS 65 AND 66 IN BLOCK 71, DISTANT WESTERLY, ALONG SAID SOUTHERLY SIDELINE, 100 FEET FROM THE WESTERLY SIDELINE OF HARMONY ROAD (40 FOOT WIDE RIGHT OF WAY) AND RUNNING, THENCE,

1.  ALONG SAID DIVISION LINE, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 9.43 FEET, THENCE,

2.  ALONG A NEW LINE THROUGH SAID LOT 66, SET 30 FEET FROM, AND PARALLEL WITH THE CENTERLINE OF THE EXISTING TRAVELED WAY, SOUTH 80 DEGREES 38 MINUTES 48 SECONDS WEST, 418.05 FEET TO A POINT OF CURVATURE, THENCE

3.  ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 450.00 FEET, A CENTRAL ANGLE OF 10 DEGREES 11 MINUTES 19 SECONDS, AN ARC LENGTH OF 80.02 FEET AND A CHORD BEARING SOUTH 75 DEGREES 33 MINUTES 08 SECONDS WEST, A CHORD DISTANCE OF 79.92 FEET TO A POINT OF TANGENCY; THENCE,

## SCHEDULE A (cont'd)

4.   SOUTH 70 DEGREES 27 MINUTES 29 SECONDS WEST, 1.92 FEET TO A CONCRETE MONUMENT FOUND IN THE DIVISION LINE BETWEEN LOTS 66 AND 67, BLOCK 71; THENCE

5.   ALONG SAID DIVISION LINE, NORTH 11 DEGREES 50 MINUTES 31 SECONDS WEST, 13.56 FEET TO THE AFORESAID MOUNT HORSE ROAD SOUTHERLY SIDELINE; THENCE

6.   ALONG SAID SOUTHERLY SIDELINE, NORTH 80 DEGREES 15 MINUTES 49 SECONDS EAST, 497.11 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 4,066 SQUARE FEET/0.0933 ACRES OF LAND AS DESCRIBED HEREIN.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE TOWNSHIP OF WARREN PURSUANT TO A DEED FROM ROME SCHOOL REALTY, L.L.C. DATED MAY 21, 2003 AND RECORDED JUNE 3, 2003 IN DEED BOOK 5379 AT PAGE 3696 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE EXISTING WESTERLY SIDELINE OF HARMONY ROAD (40 FOOT WIDE RIGHT-OF-WAY) DISTANT ALONG SAID SIDELINE, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 506.00 FEET FROM ITS INTERSECTION WITH THE SOUTHERLY SIDELINE OF MOUNT HORSE ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND RUNNING; THENCE

ALONG SAID HARMONY ROAD WESTERLY SIDELINE, THE FOLLOWING THREE COURSES:

1.   SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 16.35 FEET TO A POINT OF CURVATURE; THENCE,

2.   ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 600.00 FEET, A CENTRAL ANGLE OF 14 DEGREES 37 MINUTES 41 SECONDS, AN ARC LENGTH OF 153.15 FEET AND A CHORD BEARING SOUTH 02 DEGREES 25 MINUTES 21 SECONDS EAST, A CHORD DISTANCE OF 152.77 FEET TO A POINT OF TANGENCY; THENCE

3.   SOUTH 04 DEGREES 53 MINUTES 30 SECONDS WEST, 33.20 FEET TO THE DIVISION LINE BETWEEN LOTS 66 AND 66.01, BLOCK 71; THENCE

4.   ALONG SAID DIVISION LINE, SOUTH 80 DEGREES 15 MINUTES 49 SECONDS WEST, 5.17 FEET; THENCE

LEAVING SAID DIVISION LINE AND ALONG A NEW LINE THROUGH SAID LOT 66, THE FOLLOWING THREE COURSES, DISTANT 5.00 FEET FROM AND PARALLEL WITH SAID EXISTING WESTERLY SIDELINE OF HARMONY ROAD,

5.   NORTH 04 DEGREES 53 MINUTES 30 SECONDS EAST, 34.50 FEET TO A POINT OF CURVATURE; THENCE,

6.   ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 595.00 FEET, A CENTRAL ANGLE OF 14 DEGREES 37 MINUTES 41 SECONDS, AN ARC LENGTH OF 151.81 FEET AND A CHORD BEARING NORTH 02 DEGREES 25 MINUTES 21 SECONDS WEST, A CHORD DISTANCE OF 151.50 FEET TO A POINT OF TANGENCY; THENCE,

7.   NORTH 09 DEGREES 44 MINUTES 11 SECONDS WEST, 16.35 FEET TO THE SOUTHERLY LINE OF LOT 63 IN BLOCK 71; THENCE,

SWC-F-002733-17  01/28/2019 3:37:37 PM  Pg 30 of 49 Trans ID: CHC201946296
Recorded in the Office of the Superior Court Clerk   Pg 9 of 11   Writ #17042423

## SCHEDULE A (cont'd)

2.  ALONG SAID SOUTHERLY LINE, NORTH 80 DEGREES 15 MINUTES 49 SECONDS EAST, 5.00 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 1.013 SQUARE FEET/0.0212 ACRES OF LAND AS DESCRIBED HEREIN.

BEGINNING AT A POINT IN THE EXISTING WESTERLY SIDELINE OF HARMONY ROAD (40 FOOT WIDE RIGHT-OF-WAY) DISTANT ALONG SAID WESTERLY SIDELINE, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 200.00 FEET FROM ITS INTERSECTION WITH THE SOUTHERLY SIDELINE OF MOUNT HORES ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND RUNNING, THENCE,

1.  ALONG SAID HARMONY ROAD WESTERLY SIDELINE, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 100.00 FEET TO THE NORTHERLY LINE OF LOT 64 IN BLOCK 71; THENCE,

2.  ALONG SAID NORTHERLY LINE, SOUTH 80 DEGREES 15 MINUTES 49 SECONDS WEST, 5.00 FEET; THENCE,

3.  LEAVING SAID NORTHERLY LINE AND ALONG A NEW LINE THROUGH SAID LOT 64, NORTH 09 DEGREES 44 MINUTES 11 SECONDS WEST, 100.00 FEET FROM AND PARALLEL WITH THE FIRST COURSE DESCRIBED HEREIN, TO THE SOUTHERLY LINE OF LOT 65, BLOCK 71; THENCE,

4.  ALONG SAID SOUTHERLY LINE, NORTH 80 DEGREES 15 MINUTES 49 SECONDS EAST, 5.00 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 500 SQUARE FEET/0.0115 ACRES OF LAND AS DESCRIBED HEREIN.

THE ABOVE NUMBERS BEING AS SHOWN ON A SURVEY MADE BY JAMES F. DEADY, DATED APRIL 21, 1944, AND REVISED TO MAY 23, 1957.

BEING ALSO KNOWN AS (REPORTED FOR INFORMATIONAL PURPOSES ONLY):

LOTS 66 AND 66.01, BLOCK 71, ON THE OFFICIAL TAX MAP OF THE TOWNSHIP OF WARREN, COUNTY OF SOMERSET, STATE OF NEW JERSEY.

### 15 Harmony Road

KNOWN and DESIGNATED as Parcel Number Thirteen Section B on the map of property owned by the Harmonia Cooperative Colony Association, Inc., which map was duly recorded and filed in the Office of the Clerk of Somerset County, New Jersey, on the 10th day of April 1924, Map 87C.  Said parcel having a frontage of one hundred feet and being 569/575 feet deep.

The above description is in accordance with a survey and metes and bounds made by Templin Engineering dated September 19, 2005 sen attached.

Beginning at a point on the westerly side of Hamania Avenue, also known as Harmony Road (40' wide), said point being the common corner of Lots 52.02 and 64.01 in Block 71 as shown on the Warren Township tax map; running thence

1) Along said side line of Harmonia Avenue on a curve to the left having a radius of 532.10 feet an arc distance of 100.22 feet to a point for a corner, thence

2) N 89°20'00" W along the division line with Lot 550.00 as shown on the Warren Township tax map a distance of 569.00 feet to a point for a corner, thence

3) N 05°09'00" E along the division line with Lot 64 of said tax map a distance of 100.00 feet to a point for a corner, thence

4) S 89°20'00" E along the division line with Lot 6501 of said tax map a distance of 571.00 feet to the point and place of beginning.

## SCHEDULE A (cont'd)

19 Harmony Road and 25 Harmony Road

ALL that certain lot, tract or parcel of land and premises, situate, lying and being in the Township of Warren in the County of Somerset and the State of New Jersey, more particularly described herein:

FIRST TRACT:    BEING KNOWN AND DESIGNATED AS lots 16, 17 & 18 as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

SECOND TRACT: BEING KNOWN AND DESIGNATED AS Lot 19 IN Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

THIRD TRACT: BEING KNOWN AND DESIGNATED AS Lot 14 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

FOURTH TRACT: BEING KNOWN AND DESIGNATED AS Lot 15 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

Being known and designated as Lot(s) 60 & 60.01 in Block 71 on the Township of Warren Tax Map.

## SCHEDULE B

Limited to tangible property located on the premises known as 5 Harmony Road, Warren, NJ 07059, 11 Harmony Road, Warren, NJ 07059, 13 Harmony Road, Warren, NJ 07059, 15 Harmony Road, Warren, NJ 07059, 19 Harmony Road, Warren, NJ, and 25 Harmony Road, Warren NJ 07059 also known as Lots 60, 60.01, 62.02, 64, 66, and 66.01 Block 71 on the Official Tax Map of the Township of Warren, County of Somerset, State of New Jersey.

# EXHIBIT "D"



**SOMERSET COUNTY**

**DOCUMENT COVER SHEET**

Steve Peter, County Clerk

Electronically Recorded Somerset County, NJ
2018 Aug 01 02:34:12 PM
BK: 7060 PGS: 3274-3287
Instrument # 2018028789

| | | |
|---|---|---|
| Fee: | $173.00 | Doc Type: DEED |
| CONS: | $1,000.00 | EXEMPT: S |
| NJ XFER FEE: | $4.00 | |

HON. STEVE PETER
SOMERSET COUNTY CLERK
PO BOX 3000
20 GROVE STREET
SOMERVILLE, NJ 08876

WWW.CO.SOMERSET.NJ.US

*(Official Use Only)*

| DATE OF DOCUMENT: 2018-08-01 | TYPE OF DOCUMENT: DEED |
|---|---|
| FIRST PARTY *(Grantor, Mortgagor, Seller or Assignor)* | SECOND PARTY *(Grantee, Mortgagee, Buyer, Assignee)* |
| Frank J. Provenzano | Crown Real Estate Holdings, Inc |
| ADDITIONAL PARTIES: | |

**THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY**

| MUNICIPALITY: Warren | MAILING ADDRESS OF GRANTEE: |
|---|---|
| BLOCK: 71 | 27 Prince Street |
| LOT: 64 | Elizabeth, NJ 07208 |
| CONSIDERATION: 1000.00 | |

**THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGING INFORMATION FOR ASSIGNMENTS, RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY**

| BOOK | PAGE | INSTRUMENT # | DOCUMENT TYPE |
|---|---|---|---|
| | | | DEED |

**DO NOT REMOVE THIS PAGE**
**THIS DOCUMENT COVER SHEET IS PART OF THE SOMERSET COUNTY FILING RECORD**
**RETAIN THIS PAGE FOR FUTURE REFERENCE**

## SHERIFF'S DEED

# To All Persons to whom these Presents shall come, or whom they may Concern:

I, Frank J. Provenzano, Sr., Sheriff of the County of Somerset in the State of New Jersey, send greetings:

WHEREAS, on the Twentieth day of December, in the year of Our Lord Two Thousand Seventeen, a certain Writ of Execution was issued out of the Superior Court of New Jersey-Chancery Division-Somerset County-Docket No. F-002733-17 directed and delivered to the Sheriff of the said County of Somerset, and which said writ is in the words or to the effect following, that is to say:

NEW JERSEY, to wit:  THE STATE OF NEW JERSEY to the Sheriff of the County of Somerset, GREETING:

WHEREAS, on the following date, 12/20/2017, by a certain judgment in our Superior Court of New Jersey, in a certain cause therein pending, wherein the plaintiff is Crown Bank, and the following named parties are the defendants; J & C Capital, L.L.C.; JJC Capital, L.L.C.; School Realty, L.L.C.; and Camp Harmony, Inc., it was ordered and adjudged that certain mortgaged premises, with the appurtenances, in the Complaint and Amendment to Complaint, if any, in the said cause particularly set forth and described, that is to say:

All that certain tract or parcel of land situate, lying and being in the Township of Warren, County of Somerset and State of New Jersey, more particularly described as follows:

Deed prepared by:    _____
                     Thomas L. Przybylski
                     Sales Coordinator

## 6 Harmony Road

AS TO BLOCK 71, LOT 64:

ALL, that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Municipality of the Township of Warren, in the County of Somerset, State of New Jersey.

BEING KNOWN AND DESIGNATED as Lot 8 in Block 8 as shown on a certain map entitled "Map of Property Owned by the Harmonia Cooperative Colony Association, Inc., in the Township of Warren, Somerset County, New Jersey, duly filed in the Somerset County Clerk's Office on 04/18/1904 as Map No. 57-C.

NOTE: Being Lot(s) 64, Block 71; Tax Map of the Township of Warren, County of Somerset, State of New Jersey.

NOTE: Lot and Block shown for informational purpose only.

## 11 Harmony Road and 13 Harmony Road

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SOMERSET, STATE OF NEW JERSEY, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT, PARCEL AND LOT OF LAND LYING AND BEING SITUATE IN THE TOWNSHIP OF WARREN, COUNTY OF SOMERSET, STATE OF NEW JERSEY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF MT. HORES ROAD, SAID POINT BEING DISTANT 100.00 FEET WESTERLY FROM ITS INTERSECTION WITH THE WESTERLY LINE OF HARMONIA AVENUE AND FROM SAID POINT RUNNING THENCE:

1.  SOUTH 01 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOT 53, BLOCK 121, TAX MAP, N/F ELLIOT AND ETTA EPPER, 200.00 FEET TO A POINT; THENCE

2.  SOUTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE SOUTHERLY LINE OF LOT 53, BLOCK 121, N/F EPPER, 140.00 FEET TO A POINT IN THE EASTERLY LINE OF HARMONIA AVENUE, THENCE

3.  SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 300.00 FEET TO A POINT; THENCE

4.  NORTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE NORTHERLY LINE OF LOT 51, BLOCK 121, N/F TOWNSHIP OF WARREN, 100.00 FEET TO A POINT; THENCE

5.  SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOTS 51 AND 50, BLOCK 121, N/F TOWNSHIP OF WARREN AND EDWARD SCHULSINGER, 200.00 FEET TO A POINT; THENCE

6.  SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERLY LINE OF LOT 50, BLOCK 121, N/F SCHULSINGER, 240.00 FEET TO A POINT IN THE WESTERLY LINE OF HARMONIA AVENUE; THENCE

7.  SOUTH 00 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 29.67 FEET TO A POINT; THENCE

8.  SOUTHERLY ALONG THE WESTERLY LINE OF HARMONIA AVENUE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 472.50 FEET, AN ARC DISTANCE OF 99.63 FEET TO A POINT; THENCE

9.  SOUTH 12 DEGREES 20 MINUTES 18 SECONDS WEST, STILL ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 172.04 FEET TO A POINT; THENCE

10. NORTH 18 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE SOUTHERLY LINE OF LOT 48,

SCHEDULE A (cont'd)

BLOCK 321; 569.00 FEET TO A POINT; THENCE

11. NORTH 04 DEGREES 03 MINUTES 17 SECONDS WEST, 625.11 FEET TO A NORTHOFF; THENCE

12. NORTH 01 DEGREES 16 MINUTES 19 SECONDS EAST, 375.78 FEET TO A POINT; THENCE

13. NORTH 01 DEGREES 40 MINUTES 21 SECONDS WEST, AND ACROSS A CONCRETE UNDERGROUND, 174.79 FEET TO A POINT IN THE (FORMER) SOUTHERLY LINE OF MT. HOREB ROAD; THENCE

14. EASTERLY ALONG THE (FORMER) SOUTHERLY LINE OF MT. HOREB ROAD, ALONG A CURVE TO THE RIGHT WITH A RADIUS OF 131.57 FEET, AN ARC DISTANCE OF 113.87 FEET TO A POINT; THENCE

15. STILL ALONG THE (FORMER) SOUTHERLY LINE OF MT. HOREB ROAD, BEING DISTANT 40 FEET FROM THE CENTER LINE THEREOF, ON A COURSE BEARING SOUTH 40 MINUTES 00 SECONDS EAST, 356.93 FEET TO A POINT, SAID POINT BEING THE POINT AND PLACE OF BEGINNING.

EXCEPTING THEREFROM THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET AS A PERPETUAL EASEMENT FOR A PUBLIC ROAD, AS GRANTED BY DEED FROM LAWRENCE V. STEINBAUM AND AVON STEINBAUM, HIS WIFE, DATED MAY 16, 1919, RECORDED JUNE 13, 1919, IN DEED BOOK 1717, PAGE 170, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON BAR IN THE SOUTHERLY LINE OF MOUNT HOREB ROAD, 20 FEET FROM CENTER LINE AS PER COUNTY ROAD SYSTEM MAP FOR THE ACCEPTANCE OF MT. HOREB ROAD, PREPARED BY HERBERT L. PICKELL, TOWNSHIP ENGINEER, DATED FEBRUARY, 1929, SAID IRON BEING LOCATED WESTERLY 101.00 FEET AS MEASURED ALONG THE SOUTHERLY LINE OF MOUNT HOREB ROAD FROM ITS INTERSECTION WITH THE WESTERLY LINE OF MARENTTA AVENUE (40 FEET WIDE) SAID BEGINNING POINT ALSO BEING THE NORTHEASTERLY CORNER TO LANDS NOW OR FORMERLY OF LAWRENCE AND AVON STEINBAUM AND FROM SAID POINT OF BEGINNING; RUNNING THENCE

1. ALONG THE NORTHEASTERLY LINE OF LANDS OF STEINBAUM, NORTH 09 DEGREES 40 MINUTES 50 SECONDS WEST, 10.00 FEET TO A POINT; THENCE

2. ALONG A LINE 10 FEET PARALLEL WITH AND ADJACENT TO THE CENTER LINE OF MOUNT HOREB ROAD, AS PER THE ABOVE REFERENCE MAP, SAID LINE BEING THE NEW ADDITIONAL SIDE LINE OF MOUNT HOREB ROAD, NORTH 89 DEGREE 30 MINUTES 00 SECONDS WEST, 385.53 FEET TO A POINT OF CURVE; THENCE

3. STILL ALONG SAID IN A WESTERLY DIRECTION ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 925.37 FEET, AN ARC LENGTH OF 113.56 FEET TO A POINT IN THE WESTERLY LINE OF LANDS NOW OR FORMERLY OF STEINBAUM; THENCE

4. ALONG SAID WESTERLY LINE, NORTH 01 DEGREES 48 MINUTES 21 SECONDS WEST, 10.03 FEET TO AN IRON BAR AND CORNER TO LANDS OF STEINBAUM, SAID CORNER BEING 20 FEET FROM THE CENTER LINE OF MOUNT HOREB ROAD; THENCE

5. ALONG A LINE 10 FEET PARALLEL WITH THE AND ADJACENT TO THE CENTER LINE OF MOUNT HOREB ROAD, SAID LINE BEING THE OLD SOUTHERLY LINE OF MOUNT HOREB ROAD, IN AN EASTERLY DIRECTION ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 935.37 FEET, AN ARC LENGTH OF 113.37 FEET TO THE END OF A CURVE; THENCE

6. STILL ALONG THE SAME, SOUTH 89 DEGREES 30 MINUTES 00 SECONDS EAST, 316.53 FEET TO THE

POINT AND PLACE OF BEGINNING.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET PURSUANT TO A QUITCLAIM DEED FROM NOKE SCHOOL REALTY, L.L.C. DATED MAY 21, 2003 AND RECORDED JUNE 3, 2003, IN DEED BOOK 5379 AT PAGE 3856 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY SIDELINE OF MOUNT HORER ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND THE DIVISION LINE BETWEEN LOTS 65 AND 66 IN BLOCK 71, DISTANT WESTERLY, ALONG SAID SOUTHERLY SIDELINE, 100 FEET FROM THE WESTERLY SIDELINE OF HARMONY ROAD (40 FOOT WIDE RIGHT OF WAY) AND RUNNING; THENCE,

1. ALONG SAID SOUTHERLY SIDELINE, SOUTH 80 DEGREES 15 MINUTES 49 SECONDS WEST, 497.12 FEET TO THE WESTERLY LINE OF SAID LOT 66; THENCE,

2. ALONG SAID WESTERLY LINE EXTENDED, NORTH 11 DEGREES 40 MINUTES 03 SECONDS WEST, 16.71 FEET TO THE CENTERLINE OF THE EXISTING TRAVELED WAY OF SAID MOUNT HORER ROAD; THENCE,

3. ALONG SAID CENTERLINE, AND ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 480.00 FEET, A CENTRAL ANGLE OF 69 DEGREES 54 MINUTES 01 SECONDS, IN ARC LENGTH OF 83.23 FEET AND A CHORD BEARING NORTH 78 DEGREES 40 MINUTES 47 SECONDS EAST, A CHORD DISTANCE OF 83.21 FEET TO A POINT OF TANGENCY; THENCE

4. ALONG THE SAME, NORTH 80 DEGREES 38 MINUTES 48 SECONDS EAST 414 .89FEET TO THE EXTENSION OF THE AFORESAID DIVISION LINE BETWEEN LOTS 65 AND 66; THENCE,

5. ALONG SAID DIVISION LINE EXTENDED, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 10.57 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 10,861 SQUARE FEET/0.249 ACRES OF LAND AS DESCRIBED HEREIN.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET PURSUANT TO A DEED FROM NOKE SCHOOL REALTY, L.L.C. DATED MAY 21, 2003 AND RECORDED JUNE 3, 2003 IN DEED BOOK 5379 AT PAGE 3856 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY SIDELINE OF MOUNT HORER ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND THE DIVISION LINE BETWEEN LOTS 65 AND 66 IN BLOCK 71, DISTANT WESTERLY, ALONG SAID SOUTHERN SIDELINE, 100 FEET FROM THE WESTERLY SIDELINE OF HARMONY ROAD (40 FOOT WIDE RIGHT OF WAY) AND RUNNING; THENCE,

1. ALONG SAID DIVISION LINE, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 5.43 FEET, THENCE,

2. ALONG A NEW LINE THROUGH SAID LOT 66, SET 10 FEET FROM, AND PARALLEL WITH THE CENTERLINE OF THE EXISTING TRAVELED WAY, SOUTH 80 DEGREES 38 MINUTES 48 SECONDS WEST, 415.88 FEET TO A POINT OF CURVATURE, THENCE

3. ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 490.00 FEET, A CENTRAL ANGLE OF 10 DEGREES 11 MINUTES 14 SECONDS, AN ARC LENGTH OF 80.62 FEET AND A CHORD BEARING SOUTH 75 DEGREES 33 MINUTES 08 SECONDS WEST, A CHORD DISTANCE OF 78.12 FEET TO A POINT OF TANGENCY; THENCE;

Page 4

4.   SOUTH 70 DEGREES 27 MINUTES 29 SECONDS WEST, 1.32 FEET TO A CONCRETE MONUMENT FOUND IN THE DIVISION LINE BETWEEN LOTS 66 AND 57, BLOCK 71, THENCE

5.   ALONG SAID DIVISION LINE, NORTH 11 DEGREES 50 MINUTES 31 SECONDS WEST, 19.06 FEET TO THE AFORESAID MOUNT HORES ROAD SOUTHERLY SIDELINE; THENCE,

6.   ALONG SAID SOUTHERLY SIDELINE, NORTH 00 DEGREES 25 MINUTES 49 SECONDS EAST, 407.11 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 4,066 SQUARE FEET/0.0021 ACRES OF LAND AS DESCRIBED HEREIN.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE TOWNSHIP OF WARREN PURSUANT TO A DEED FROM HOME SCHOOL REALTY, L.L.C. DATED MAY 21, 2001 AND RECORDED JUNE 1, 2001 IN DEED BOOK 5279 AT PAGE 1660 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN SAID EXISTING WESTERLY SIDELINE OF HARMONY ROAD (60 FOOT WIDE RIGHT-OF-WAY) DISTANT ALONG SAID SIDELINE, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 600.00 FEET FROM ITS INTERSECTION WITH THE SOUTHERLY SIDELINE OF MOUNT HORES ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND RUNNING; THENCE

ALONG SAID HARMONY ROAD WESTERLY SIDELINE, THE FOLLOWING THREE COURSES;

1.   SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 16.35 FEET TO A POINT OF CURVATURE; THENCE,

2.   ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 600.00 FEET, A CENTRAL ANGLE OF 24 DEGREES 37 MINUTES 41 SECONDS, AN ARC LENGTH OF 183.14 FEET AND A CHORD BEARING SOUTH 02 DEGREES 25 MINUTES 24 SECONDS EAST, A CHORD DISTANCE OF 153.77 FEET TO A POINT OF TANGENCY; THENCE

3.   SOUTH 84 DEGREES 13 MINUTES 30 SECONDS WEST, 33.28 FEET TO THE DIVISION LINE BETWEEN LOTS 66 AND 66.01, BLOCK 71; THENCE

4.   ALONG SAID DIVISION LINE, SOUTH 80 DEGREES 13 MINUTES 69 SECONDS WEST, 5.17 FEET; THENCE

LEAVING SAID DIVISION LINE AND ALONG A NEW LINE THROUGH SAID LOT 16, THE FOLLOWING THREE COURSES, DISTANT 5.00 FEET FROM AND PARALLEL WITH SAID EXISTING WESTERLY SIDELINE OF HARMONY ROAD.

5.   NORTH 04 DEGREES 53 MINUTES 10 SECONDS EAST, 34.08 FEET TO A POINT OF CURVATURE; THENCE,

6.   ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 593.00 FEET, A CENTRAL ANGLE OF 14 DEGREES 57 MINUTES 41 SECONDS, AN ARC LENGTH OF 152.91 FEET AND A CHORD BEARING NORTH 02 DEGREES 25 MINUTES 31 SECONDS WEST, A CHORD DISTANCE OF 152.46 FEET TO A POINT OF TANGENCY; THENCE,

7.   NORTH 15 DEGREES 44 MINUTES 11 SECONDS WEST, 16.35 FEET TO THE SOUTHERLY LINE OF LOT 63 IN BLOCK 71; THENCE;

SWC-F-002733-17   01/28/2019 3:37:37 PM  Pg 40 of 49 Trans ID: CHC201946296

b. ALONG SAID NORTHERLY LINE, NORTH 80 DEGREES 13 MINUTES 49 SECONDS EAST, 3.10 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 1,017 SQUARE FEET/0.0233 ACRES OF LAND AS DESCRIBED HEREIN.

BEGINNING AT A POINT IN THE EXISTING WESTERLY SIDELINE OF HARMONY ROAD (66 FOOT WIDE RIGHT-OF-WAY) DISTANT ALONG SAID WESTERLY SIDELINE, SOUTH 09 DEGREES 44 MINUTES 21 SECONDS EAST, 100.00 FEET FROM THE INTERSECTION WITH THE NORTHERLY SIDELINE OF POINT BOUND ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND RUNNING; THENCE,

4. ALONG SAID HARMONY ROAD VARIABLE SIDELINE, SOUTH 09 DEGREES 44 MINUTES 21 SECONDS EAST, 100.00 FEET TO THE NORTHERLY LINE OF LOT 64 IN BLOCK 711 THENCE,

5. ALONG SAID NORTHERLY LINE, SOUTH 80 DEGREES 15 MINUTES 49 SECONDS EAST, 5.10 FEET, THENCE,

7. LEAVING SAID NORTHERLY LINE AND ALONG A NEW LINE THROUGH SAID LOT 66, DISTANT 5.10 FEET FROM AND PARALLEL WITH THE FIRST COURSE DESCRIBED HEREIN, NORTH 09 DEGREES 44 MINUTES 21 SECONDS WEST, 100.00 FEET TO THE SOUTHERLY LINE OF LOT 62 BLOCK 71; THENCE,

8. ALONG SAID SOUTHERLY LINE, NORTH 80 DEGREES 13 MINUTES 49 SECONDS EAST, 5.10 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 510 SQUARE FEET...0.0114 ACRES OF LAND AS DESCRIBED HEREIN.

THE ABOVE POINTERS BEING AS SHOWN ON A SURVEY MADE BY JAMES P. BRADY, DATED APRIL 21, 1988, AND REVISED TO MAY 21, 1977.

BEING ALSO KNOWN AS (DESIGNATED FOR REPRESENTATIONAL PURPOSES ONLY) :

LOTS 64 AND 66.01, BLOCK 71, ON THE OFFICIAL TAX MAP OF THE TOWNSHIP OF WARREN, COUNTY OF SOMERSET, STATE OF NEW JERSEY.

## 15 Harmony Road

KNOWN and DESIGNATED as Block Number Thirteen Section B on the map of property owned by the "Harmonia" Cooperative Colony Association, Inc., which map was duly recorded and filed in the Office of the Clerk of Somerset County, New Jersey, on the 11th day of April 1924, Map #2C. Said parcel having a frontage of one hundred feet and being 348/111 feet deep.

The above description is in accordance with a survey and meets and bounds made by Templin Engineering dated September 10, 2001 and attached.

Beginning at a point on the westerly side line of Harmonia Avenue, aka 2nd to 4a Harmony Road (40' wide), said point being the common corner of Lots 62,63 and 64.01 in Block 71 as shown on the Warren Township tax map; running thence:

1) Along said side line of Harmonia Avenue on a curve to the left having a radius of 229.5,0 feet as an; distance of 190.35 feet to a point for a corner; thence

2) N 89°20'00" W along the division line with Lot 64.60 as shown on the Warren Township tax map a distance of 369.00 feet to a point for a corner; thence

3) N 03°49'00" E along the division line with Lot 64.64 said tax map a distance of 100.00 feet to a point for a corner; thence

4) S 89°20'00" E along the division line with Lot 65.01 of said tax map a distance of 371.00 feet to the point and place of beginning.

## 10 Harmony Road and 25 Harmony Road

ALL the certain lot, tract or parcel of land and premises, thence, lying and being in the Township of Warren in the County of Somerset and the State of New Jersey, more particularly described herein.

FIRST TRACT:  BEING KNOWN AND DESIGNATED AS lots 36, 37 & 38 as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/01/1924 as Map No. 87-C.

SECOND TRACT: BEING KNOWN AND DESIGNATED AS Lot 10 IN Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/01/1924 as Map No. 87-C.

THIRD TRACT: BEING KNOWN AND DESIGNATED AS Lot 14 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/01/1924 as Map No. 87-C.

FOURTH TRACT: BEING KNOWN AND DESIGNATED AS Lot 15 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/01/1924 as Map No. 87-C.

Being known and designated as Lot(s) 60 & 60.01 in Block 71 on the Township of Warren Tax Map.

## SCHEDULE B

Limited to tangible property located on the premises known as 5 Harmony Road, Warren, NJ 07059, 11 Harmony Road, Warren, NJ 07059, 13 Harmony Road, Warren, NJ 07059, 15 Harmony Road, Warren, NJ 07059, 19 Harmony Road, Warren, NJ, and 25 Harmony Road, Warren NJ 07059 also known as Lots 60, 60.01, 62.02, 64, 66, and 66.01 Block 71 on the Official Tax Map of the Township of Warren, County of Somerset, State of New Jersey.

Commonly known as 5, 11, 13, 15 , 19 & 25 Harmony Road, Warren, NJ

SWC-F-002733-17   01/28/2019 3:37:37 PM  Pg 41 of 49 Trans ID: CHC201946296

TOGETHER with all and singular the rights, liberties, privileges, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and remainders, rents, issues and profits thereof, and also all of the estate, right, title, interest, use, property, claim, and demand of the said defendants of, in, to and out of the same, be sold, to pay and satisfy in the first place unto the plaintiff, Crown Bank, the sum of $5,569,595.77, being the principal and interest secured by those certain and separate Mortgage and Security Agreements, each dated August 6, 2014, given by JJC Capital, L.L.C., J&C CAPITAL, L.L.C., and School Realty, L.L.C. together with lawful interest from and including July 31, 2017 on total sum due, until the same be paid and satisfied and also the costs of the aforesaid plaintiff, with interest thereon.

And that, for that purpose a Writ of Execution should issue, directed to the Sheriff of the County of Somerset, commanding him to make sale as aforesaid; and that the surplus money arising from such sale, if any there be, should be brought into said court, subject to the further order of the said court, as by the said judgment remaining as of record in our Superior Court of New Jersey at Trenton, doth and may more fully appear; and whereas, the costs of the said Plaintiff have been duly taxed at the following sum: $8,425.00.

THEREFORE, you are hereby commanded that you cause to be made of the premises aforesaid by selling so much of the same as may be needful and necessary for the purpose, the said sum of $5,569,595.77 as of July 31, 2017, together with lawful interest from and including July 31, 2017 and the same you do pay to the said plaintiff together with lawful interest thereon as aforesaid, and the sum aforesaid of costs with interest thereon, and that you have the surplus money, if any there be, before the Superior Court of New Jersey, aforesaid at Trenton, within thirty (30) days after sale and if there be no sale, this Writ to be returnable within twenty-four (24) months pursuant to R. 4:59-1(a); and to abide the further Order of said court, according to the judgment aforesaid; and you are to make return at the time and place aforesaid, by certificate under your hand, of the manner in which you have executed this our Writ, together with this Writ.

WITNESS, the HONORABLE Paul Innes, P.J. Chancery Judge of the Superior Court, at Trenton, aforesaid, this 20th day of December, 2017.

Hill Wallack, LLP
Attorneys for Plaintiff

/s/ Michelle M. Smith
MICHELLE M. SMITH, ESQ.
Clerk of Superior Court

By: /s/ Mark A. Roney
MARK A. RONEY

AS by the Record of said Writ of Execution entered in the Records of Executions issued in the Superior Court Clerk's Office, 17042423, and examined by me.

/s/ Michelle M. Smith
MICHELLE M. SMITH, ESQ.
Clerk of Superior Court

AND WHEREAS, I, the said Frank J. Provenzano, Sr., as such Sheriff, as aforesaid, did in due form of law, advertise the said lot of land and premises to be sold under and by virtue of the said writ of execution at public vendue, to be held at the Sheriff's Office in Somerville, New Jersey, on TUESDAY, the 15th day of May, 2018*, at two o'clock P.M. prevailing time of said day by advertisement signed by myself, and posted in the Sheriff's Office and also on the property which was in the Township of Warren in which the said land lies, at least three weeks next before the time appointed for selling the same, and also published in the Courier News and Bernardsville News, two newspapers printed and published in the said County, where the said land is situated, and circulated in the neighborhood of said land, for at least four weeks, successively, once in each week preceding the said time.

*Sale originally scheduled for Tuesday,
April 17, 2018, but was adjourned
until Tuesday, May 15, 2018,
and held at that time,

at which last-named time and place I did accordingly offer and expose the said lot of land and premises for sale at public vendue, under and by virtue of the said writ of Execution.

WHEREUPON:   Mark Roney, bidding for Crown Bank, 27 Prince Street, Elizabeth New Jersey 07208, did bid the sum of One Thousand Dollars and No Cents ($1,000.00) on its behalf

and no other person bidding as much, I did then and there openly and publicly, in due form of law, between the hours of two and five in the afternoon, strike off and sell the said lot of land and premises for the said sum of One Thousand Dollars and No Cents ($1,000.00) to the said Crown Bank, 27 Prince Street, Elizabeth New Jersey 07208, being then and there the highest bidder for the same.

And the said Crown Bank, by an instrument in writing dated 05/15/2018 assigned all its right, title and interest in and to the said decree and bid to Crown Real Estate Holdings, Inc., 27 Prince Street, Elizabeth, New Jersey 07208.

NOW, THEREFORE, KNOW YE, that I the said Frank J. Provenzano, Sr., as such Sheriff aforesaid, under and by virtue of said Writ of Execution, and in execution of the power and trust in me reposed, and also for and in consideration of the said sum of One Thousand Dollars and No Cents ($1,000.00) to me in hand paid, the receipt whereof I do hereby acknowledge and therefrom acquit, exonerate and forever discharge the said

Crown Real Estate Holdings, Inc.

Its successors and assigns, heirs, executors and administrators, have granted, bargained, sold, assigned, transferred and conveyed, and by these presents do grant, bargain, sell, assign, transfer, and convey unto the said

Crown Real Estate Holdings, Inc.

its successors and assigns, heirs and assigns, all and singular, the said lot of land and premises, with the appurtenances, privileges and hereditaments thereto belonging or in anyway appertaining; TO HAVE AND TO HOLD the same unto the said

Crown Real Estate Holdings, Inc.

its successors and assigns, heirs and assigns, to its only proper use, benefit and behoof forever, in as full, ample and beneficial a manner as by virtue of the said Writ of Execution, I may, can, or ought to convey the same.

And I, the said Frank J. Provenzano, Sr., for myself, my heirs, executors and administrators, do hereby covenant, promise and agree to with the said

Crown Real Estate Holdings, Inc.

its successors and assigns, heirs and assigns, that I have not, as such Sheriff aforesaid, done or caused, suffered or procured to be done, any act, matter or thing whereby the estate hereby intended to be conveyed in and to the said lot of land and premises, with the appurtenances, is, may, or can be changed, charged, encumbered or defeated in any way whatever.

Page 10

IN WITNESS WHEREOF, I, the said Frank J. Provenzano, Sr. as such Sheriff aforesaid, have hereunto set my hand and seal this Twenty-First day of June, 2018.

Signed, sealed and delivered
in the presence of

_____
William T. Cooper, III, Esq.

_____
Frank J. Provenzano, Sr., Sheriff (L.S.)

NEW JERSEY, SOMERSET COUNTY, ss.

On this Twenty-First day of June, 2018 before me, the subscriber, An Attorney at Law of New Jersey, personally appeared Frank J. Provenzano, Sr., Sheriff of the County of Somerset aforesaid, who is I am satisfied, the grantor in the within indenture named, and I having first made known to him the contents thereof he did thereupon acknowledge that he sign, sealed and delivered the same as his voluntary act and deed, for the use and purposes therein expressed, and the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in P.L. 1968, c 40, Sec. 1 (c) is $1,000.00.

_____
William T. Cooper, III
An Attorney at Law of New Jersey

I, Frank J. Provenzano, Sr., Sheriff of the County of Somerset, State of New Jersey do solemnly swear that the land and real estate described in this deed made by me to Crown Bank, 27 Prince Street, Elizabeth New Jersey 07208, who assigned its bid to Crown Real Estate Holdings, Inc., 27 Prince Street, Elizabeth, New Jersey 07208 was by me sold by virtue of a good and subsisting execution, as is therein recited, that the money ordered to be made has not been, to my knowledge or belief, paid or satisfied; that the time and place of the sale of said land and real estate was by me duly advertised as required by law, and that the same was cried off and sold to a bona fide purchaser for the best price that could be obtained.

_____
Frank J. Provenzano, Sr., Sheriff

Sworn before me, An Attorney at Law of New Jersey, on this Twenty-First day of June in the year of our Lord, Two Thousand and Eighteen. And I do certify that I have examined the above deed mentioned, and do approve the same and order it to be recorded as a good and sufficient conveyance of the lands and real estate therein described.

_____
William T. Cooper, III
An Attorney at Law of New Jersey

Page 11

Sale No. 12979

# Deed

Frank I. Provenzano, Sr.
Sheriff of Somerset County

To

Crown Real Estate Holdings, Inc.,
27 Prince Street, Elizabeth,
New Jersey 07208

Consideration            $1,000.00

Dated, Twenty-First day of June, 2018

Received in the Clerk's Office of the
County of Somerset, on the _____ day
of _____ 201__
at _____
_____ and recorded
in Book _____ of Deeds for
said County, Page _____

_____
Clerk

RTF-3 (Rev. 2-15)

## STATE OF NEW JERSEY
## AFFIDAVIT OF CONSIDERATION
### (STATEMENT OF PRIOR MORTGAGE, LIENS OR ENCUMBRANCES)
### FOR
### SHERIFF'S DEEDS
(c. 225, P.L. 1979)
To Be Recorded With Deed Pursuant to c. 49 P.L. 1968, as amended, and c. 225, P.L. 1979

STATE OF NEW JERSEY  }  ss.
COUNTY OF Mercer

**FOR RECORDER'S USE ONLY**
Consideration $
Realty Transfer Fee $
Date _____ By _____

**IMPORTANT NOTES:**
This form is to be attached to all Sheriff's Deed not otherwise exempt pursuant to N.J.S.A 46:15-10, when presented to the County Clerk or Register of Deed's for recording. One of the following blocks MUST be checked:

[✓] NO PRIOR MORTGAGES OR LIENS ARE OUTSTANDING.

[ ] PRIOR MORTGAGE OR LIENS OUTSTANDING AND NOT EXTINGUISHING BY THIS SALE ARE AS LISTED IN SECTION 2 BELOW.

(1) PARTY OR LEGAL REPRESENTATIVE

Crown Bank
(Plaintiff)

Hill Wallack LLP
(Legal Representative of Plaintiff)

(*Legal representative is to interpreted broadly to include any person actively and responsibly participating in the transaction, such as but not limited to an attorney representing one of the parties; a closing officer of a title company of lending institution participating in transaction; a holder of power of attorney from plaintiff.)

(2) CONSIDERATION
Deponent states that, with respect to deed hereto annexed, theme follows the name or names of all mortgages and other holders of encumbrance constituting "consideration" as defined in the act to which this act is a supplement (C. 46:15-5(c)), to which such sale shall be subject. Such prior mortgages, liens and encumbrances are as follows:

| NAME OF SECURED PARTY | CURRENT AMOUNT DUE |
|---|---|
| None | $ 0.00 |
| | |
| | |
| | |
| | |
| | |
| TOTAL $ | 0.00 |

NOTE: The amount of consideration on which the Realty Transfer Fee shall be calculated shall include both the total listed above and the amount bid at the sale as set forth in the Sheriff's Deed.

Deponent makes affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1968, as amended, and c. 225, P.L. 1979.

Name of Deponent Michael Kahme, Esq
21 Roszel Road, Princeton, NJ 08543
(Address of Deponent)

Subscribed and Sworn to before me
this 18th
Day of July, 2018 , 19

KAITLIN O'CONNOR
Notary Public, State of New Jersey
My Commission Expires
March 11, 2020

**AMOUNT BID AT SHERIFF SALE**
$ 1,000.00

**FOR OFFICIAL USE ONLY**
This space for use of County Clerk or Register of Deeds

Instrument Number _____ County _____
Deed Number _____ Block _____ Page _____
Deed Dated _____ Date Recorded _____

**IMPORTANT – BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE FOLLOWING PAGE.**

This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended without the approval of the Director.

ORIGINAL   to be attached to Sheriff's Deed.
COPY      to be retained by Sheriff Deed.

Mark A. Roney, Esq./0012622001
Michael Kahme, Esq./022031985
HILL WALLACK LLP
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
(609) 924-0808
Attorneys for Plaintiff,
Crown Bank
Our File No. 13530-194/fkm

| | |
|---|---|
| Crown Bank,<br><br>          Plaintiff,<br><br>vs.<br><br>J & C Capital, L.L.C., et al.,<br><br>          Defendants. | Superior Court of New Jersey<br>Chancery Division Somerset County<br>General Equity<br><br>Docket No. F-002733-17<br><br>          Civil Action<br><br>*Assignment of Bid* |

FOR VALUE RECEIVED, Crown Bank, does by this presents, assigns, sets over and transfers unto Crown Real Estate Holdings, Inc. whose address is 27 Prince Street, Elizabeth, New Jersey 07208, all that certain bid made by it at a sale held on _____, 20__, of the premises known as 5 Harmony Road, 11 Harmony Road, 13 Harmony Road, 15 Harmony Road, 19 Harmony Road,  and 25 Harmony Road, Warren, NJ 07059 conducted by Sheriff of Somerset County, to the aforesaid assignee.

1

IN WITNESS WHEREFORE, the said Corporation for Plaintiff has caused this presents to be signed by its proper officers and cause its Corporate Seal to be affixed this *11* day of *April* 20*18*

By: _____ Pres.

ATTEST:

_____ Sec.

STATE OF :
:SS
COUNTY OF :

BE IT REMEMBERED that on this *11* day of *April* , 20*18* before me the subscriber, personally appeared _____ , who being by me sworn upon oath does depose and make proof to my satisfaction that he/she is the _____ President of Crown Bank, Plaintiff herein, the party mentioned in the within Instrument, and the execution, as well as the making of this Instrument, has been duly authorized by a proper resolution of the Board of Directors of the Corporation and the seal affixed to said Instrument is such Corporate Seal and was thereto affixed and said Instrument is signed and delivered by said _____ President and for the voluntary will and deed of said Corporation and in the presence of the deponent thereupon he/she subscribed her/his name thereto as witness.

_____ Sec.

Sworn to and subscribed
before me this \11\ day
of *April* , 20*18*.

_____
Notary Public

PEGGY ANN LANE
NOTARY PUBLIC OF NEW JERSEY
ID # 2358577
My Commission Expires Apr 13, 2022

I hereby deputize

A Sheriff's Officer to
serve the within process

Sheriff

022019

# EXHIBIT B

## FORBEARANCE, USE AND OCCUPANCY AGREEMENT

This Forbearance, Use and Occupancy Agreement (the "Agreement") is made by Crown Bank ("Lender") and Camp Harmony, Inc. ("Camp Harmony"), J & C Capital, L.L.C. ("J&C"), JJC Capital L.L.C. ("JJC"), School Realty, L.L.C. ("School Realty"), and Jerome P. Amedeo ("Amedeo", and with Camp Harmony, J&C, JJC, and School Realty collectively referred to as the "Obligors"). Lender and the Obligors are collectively referred to as the "Parties" and this Agreement shall be effective as of the date it is signed.

WHEREAS, on or about August 6, 2014, Crown and Camp Harmony, J&C, JJC, and School Realty (collectively the "Borrowers") entered into a Term Loan and Security Agreement (the "Agreement") whereby Crown agreed to lend the principal sum of $5,200,000.00 to the Borrowers (the "2014 Loan"); and

WHEREAS, in connection with the extension of the Loan, on or about August 6, 2014 the Borrowers, for good and valuable consideration, among other things, made and delivered to Crown a Commercial Mortgage Note in the original principal amount of Five Million Two Hundred Thousand and 00/100 Dollars ($5,200,000.00) (the "Mortgage Note") and Amedeo provided an absolute and unconditional guaranty of the amounts due on the 2014 Loan; and

WHEREAS, to secure the Borrowers' observance, payment and performance of their obligations under the 2014 Loan, on or about August 6, 2014, among other things, J&C, JJC, and School Realty (collectively referred to as the "Mortgagors") each executed and delivered a separate Mortgage and Security Agreement (collectively referred to as the "Mortgages") and a Commercial Assignment of Leases and Rents (collectively referred to as the "Assignments of Rents") in favor of Crown which were recorded against certain real property owned by the Mortgagors and located at 5 Harmony Road, 11 Harmony Road, 13 Harmony Road, 15 Harmony Road, and 25 Harmony Road, Warren, New Jersey 07059 (collectively referred to as the "Mortgaged Property") ; and

WHEREAS, on or about December 14, 2015, Crown, Camp Harmony, and School Realty entered into a Loan Agreement (the "$50,000 Loan Agreement") whereby Crown agreed to lend the principal sum of $50,000.00 to Camp Harmony and School Realty (the "$50,000 Loan") and Crown, Camp Harmony, and School Realty entered into a Loan Agreement (the "$200,000 Loan Agreement") whereby Crown agreed to lend the principal sum of $200,000.00 to Camp Harmony and School Realty (the "$200,000 Loan"); and

WHEREAS, the Parties executed various agreements and instruments evidencing the Obligors' liabilities to Crown under the $50,000 Loan and $200,000 Loan; and

WHEREAS, the Obligors defaulted on their obligations under the 2014 Loan, the $50,000 Loan, and the $200,000 Loan resulting in Crown initiating: (a) a lawsuit in the Superior Court of New Jersey entitled Crown Bank v. Camp Harmony, Inc., et al, Law Division, Somerset County, Docket No. SOM-L-108-17 (the "Law Division Action") and (b) a foreclosure action in the Superior Court of New Jersey entitled Crown Bank v. Camp Harmony, Inc., et al, Law Division, Somerset County, Docket No. F-002733-17 (the "Foreclosure Action"); and

1

**WHEREAS**, judgment was entered in the Law Division Action against the Obligors on September 15, 2017 in the aggregate amount of $5,866,023.94 as of July 31, 2017, plus interest (the "Law Division Judgment") and Final Judgment in the amount of $5,569,595.77 as of July 31, 2017, plus interest and costs was entered on December 20, 2017 in the Foreclosure Action (the "Final Judgment"); and

**WHEREAS**, a Sheriff's Sale of the Mortgaged Property is currently scheduled for Tuesday, May 15, 2018 (the "Sale"), and the Obligors have utilized their two statutory adjournments of the Sale; and

**WHEREAS**, in order to avoid the further expenditure of their resources and for purposes of finality, the Parties desire to amicably set a schedule relating to the Sale and any subsequent ejectment proceedings relating to the Obligors and the Mortgaged Property, and to memorialize their agreement in this writing herein; and,

**NOW, THEREFORE**, for good and valuable consideration as set forth herein, the receipt and sufficiency of which is hereby acknowledged by the Parties, and intending to be legally bound, the parties hereto agree as follows:

1.    **Forbearance From Ejectment Only**.  Subject to the Obligors' compliance with the following terms and conditions, and so long as there is no Event of Default under this Agreement, and the Lender is the successful bidder for the Mortgaged Property at the Sale, Lender agrees to forbear only from ejecting the Obligors and any related parties from the Mortgaged Property, through and including September 30, 2018 (the "Forbearance Period"):

    a.    Upon execution and delivery of this Agreement to Lender, Obligors will: (i) make a payment to Lender in the amount of ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00), in immediately available funds, via wire transfer, simultaneously with the execution and delivery of this Agreement to Lender, plus one-twelfth (1/12th) of the annual real estate taxes, and assessments associated with the Mortgaged Property (the "Initial Forbearance Payment"); and (ii) provide Lender with satisfactory written proof of current insurance relating to their business operations at the Mortgaged Property for amounts of coverage for personal injuries, property damage, workmen's compensation arising out of or relating to the Obligors' business operations at the Mortgaged Property.  The Initial Forbearance Payment represents the monthly forbearance payment due for May 2018 under this Agreement and a security deposit equal to one month's forbearance payment.

    b.    Within five (5) business days of the Sale, Obligors shall provide satisfactory written proof that Lender or its assignee/designee is a listed as "loss payee" on all insurance policies relating to the Obligors' business operations at the Mortgaged Property, including, but not limited to, general liability policies, automobile policies, and workmen's compensation in such amounts as Crown may reasonably require. .  During the Forbearance Period Obligors shall continuously maintain all presently existing insurance policies in an amount acceptable to the Lender or its assignee/designee, including mutually agreeable "tail" coverage, if applicable.  The Obligors shall notify their insurance company that Crown or its assignee as it designates will be the owner of the Mortgaged Property upon receipt of the Sheriff's Deed.

c.      It is agreed to and understood by the Parties hereto that the relationship between Lender and Obligors will at all times during the Forbearance Period be that of creditor and Debtor, and under no circumstances shall the relationship be construed as creating a partnership or joint venture.

d.      Beginning on June 1, 2018, and then on July 1, 2018, August 1, 2018, and September 1, 2018, **TIME OF THE ESSENCE WITH NO GRACE PERIOD**, the Obligors shall make a payment to Lender in the amount of FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00), in immediately available funds, via wire transfer, simultaneously with the execution and delivery of this Agreement to Lender, plus one-twelfth (1/12th) of the annual real estate taxes, and assessments associated with the Mortgaged Property (the "Monthly Forbearance Payments").

e.      Provided that no Event of Default occurs under this Agreement, and Lender is the successful bidder at the Sale and receives the Sheriff's Deed for the Mortgaged Property, Lender agrees to forbear from scheduling an ejectment of the Obligors from the Property until after September 30, 2018; provided however that Lender may obtain and submit such documents necessary to schedule an ejectment so long as any date which the Sheriff of Somerset County may schedule for an ejectment is adjourned so that it does not occur on or before September 30, 2018.

f.      Nothing herein shall prevent the Sale of the Mortgaged Property and the Obligors expressly acknowledge and agree that Crown may proceed with the Sale and that this Agreement shall have no force and effect unless Crown is the successful bidder at the Sale and receives a Sheriff's Deed for the Mortgaged Property. In the event that a third-party is the successful bidder at the Sale, Crown shall have no obligation to prevent any ejectment proceedings or otherwise act on the Obligors' behalf to enforce this Agreement and the Initial Forbearance Payment shall be used as a credit against the amount owed by the Obligors. Moreover, nothing herein shall be deemed a waiver of Crown's rights and remedies under the loan documents for the 2014 Loan, the $50,000 Loan, and the $200,000 Loan and at law and equity.

g.      Obligors acknowledge and agree that the execution of this Agreement does not create a landlord/tenant relationship between the Parties. The Parties agree that no such relationship is intended or contemplated by the execution of this Agreement.

h.      Obligors stipulate to the extent, validity, and priority of the Mortgages and related documents recorded against the Mortgaged Property and all other agreements or instruments they executed and delivered to Crown relating to the 2014, Loan, the $50,000 Loan and the $200,000 Loan.

i.      Obligors further stipulate, acknowledge, and confirm that: (i) they do not have any legitimate claims against Lender or defenses to the enforcement of the Law Division Judgment, the Final Judgment, or any of the agreements or instruments executed in connection with the 2014, Loan, the $50,000 Loan and the $200,000 Loan; and, (ii) they have no statutory or other basis to object to or delay the Sale, delivery of a Sheriff's Deed, or ejectment or eviction proceeding relating to the Mortgaged Property.

      j.    Obligors waive any and all rights they may have, now or in the future to stay, delay, file an objection to or otherwise interfere with the Sale and/or dispute, delay, or interfere with the delivery of a Sheriff's Deed to Lender or any proceedings to eject or evict any of the Obligors, or any other party in possession of the Property, upon the occurrence of an Event of Default under this Agreement, as defined in Section 4, below.

2.    **Condition of the Mortgaged Property; Inspections**.  Obligors shall maintain the Mortgaged Property in its current condition and shall not remove, alter, disable, damage or otherwise render inoperable any equipment, fixtures, or personal property utilized in connection with the business operations at the Mortgaged Property. Obligors shall permit Lender reasonable access to the Mortgaged Property to conduct inspections of same, which inspections will be conducted during normal business hours on no less than 24 hours notice. On or before the expiration of the Forbearance Period, Obligors shall turnover all keys, security codes, and other information to Lender relating to the Mortgaged Property so as to provide Lender access to the entirety of the Mortgaged Property. The Obligors shall, by September 30, 2018, notify Crown or is assignee that they have vacated the Mortgaged Property. Obligors shall not remove, secret, or sell any equipment, fixtures, or personal property subject to Lender's security interest unless prior, written approval of Lender is received.

3.    **No Residential Tenants**.  Obligors acknowledge and agree that they are not "tenants" as that term is defined in the New Jersey Tenant Anti-Eviction Act, N.J.S.A. 2A:18-61.1, *et seq*. (the "Act"). Obligors further acknowledge and agree that there are no third-parties who are "tenants" as defined in the Act. To the extent that Amedeo is a tenant under the Act, he hereby waives and relinquish any and all rights that he, and any person claiming through him, may have under the Act. Obligors shall be responsible for any and all of Lender's attorneys' fees and costs relating to or arising out of any proceeding or efforts to evict and/or eject the Obligors or any third-party from the Mortgaged Property in the event they remain in possession after September 30, 2018 or the occurrence of an Event of Default.

4.    **Default and Lender's Remedy**.

      a.    Obligors will be in default under this Agreement (an "Event of Default") if: (i) they fail to make any payments under this Agreement, including the Monthly Forbearance Payments; (ii) they fail to comply with any covenant or obligation set forth in this Agreement or the agreements or instruments they executed and delivered to Crown relating to the 2014 Loan, the $50,000 Loan, or the $200,000 Loan; (iii) any representations set forth in this Agreement are false or intentionally inaccurate; and/or (iv) they contest the validity of the Law Division Judgment, Final Judgment, or this Agreement, provided, however, that nothing herein shall be deemed a waiver of the Obligors' rights to challenge Lender's claim that a subsequent Event of Default has occurred under this Agreement.

      b.    Without notice of any kind, upon the occurrence of an Event of Default, Lender may: (i) schedule an ejectment of the Obligors prior to the expiration of the Forbearance Period; (ii) exercise any and all other remedies available to it under agreements or instruments they executed and delivered to Crown relating to the 2014 Loan, the $50,000 Loan, and the $200,000 Loan, the Law Division Judgment, the Final Judgment, or this Agreement; and, (iii) exercise any other right or remedy available at law or in equity.

4

c.       Upon the occurrence of an Event of Default, Obligors agree that they are liable to Lender for all costs and expenses arising out of or relating to the preparation of this Agreement, the enforcement of this Agreement, or any other actions taken by Lender relating to this Agreement, the Law Division Judgment, or the Final Judgment, including Lender's attorneys' fees and costs.

5.       **Release of Lender**.   Upon the execution of this Agreement, and for other good and satisfactory consideration, which is acknowledged, Obligors, for themselves, their successors and assigns or heirs, hereby remise, release and discharge Lender, its directors, officers, parents, subsidiaries, employees, professionals, attorneys, administrators and assigns, of and from any and all claims, causes of action, complaints, suits, debts, liens, judgments, obligations, liabilities, demands, losses, damages, costs and expenses (including attorneys' fees and expenses) of any kind, character or nature whatsoever, whether based in law or in equity, on federal, state, local, foreign, statutory or common law, or any other law, rule or regulation, or whether class, individual, derivative or direct, accrued or unaccrued, asserted or unasserted, known or unknown, concealed or hidden, foreseen or unforeseen, matured or not matured, fixed or contingent, whether direct or indirect, for indemnity, reimbursement, or contribution, that existed or may have existed from the beginning of time to the date of this Agreement that arose in connection with or relate in any way to the agreements or instruments they executed and delivered to Lender relating to the 2014 Loan, the $50,000 Loan, the $200,000 Loan, the Law Division Action, the Foreclosure Action, the Law Division Judgment, the Final Judgment, and this Agreement, including but not limited to all claims or defenses that were or could have been asserted by the Obligors in the Law Division Action, the Foreclosure Action, or other proceeding of any kind (the "Claims and Defenses").

6.       **Entire Agreement; No Amendments Unless In Writing**.       It is further understood and agreed that this is the complete agreement between the Parties regarding the subject matter of this Agreement, and that there are no written or oral understandings, agreements, or representations directly or indirectly connected with this Agreement that are not expressly incorporated herein.  The terms of this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective permitted successors and assigns.  No provision of this Agreement may be amended, waived or otherwise modified without the prior written consent of Lender.

7.       **Voluntary Agreement**.       Obligors hereby declare, covenant, and agree that they have been advised of their rights to review the terms and conditions of this Agreement with an attorney before executing same and the Obligors had the opportunity to review this Agreement with their attorney before executing same.  The Obligors voluntarily accept the terms and conditions herein, and the consideration described in this Agreement for the purpose of making a full and final compromise, adjustment, and settlement of the matters described in this Agreement.

8.       **Interpretation**.       Nothing in this Agreement shall be construed in favor of one party against another party.  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the party or parties referred to may require.

9.    **Authority**.    Each    individual    who    signs    this    Agreement    represents, acknowledges, and warrants on their behalf that they have been duly authorized to execute this Agreement on behalf of the party for which they have signed.

10.    **Controlling Law**.    This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without reference to principles of conflicts of laws.  To the extent any provisions of any other state or federal law are inconsistent with the provisions of this Agreement, the Parties acknowledge and agree that New Jersey law shall control and the general releases given herein are meant to have the most expansive interpretation permitted by New Jersey law.

11.    **Jurisdiction and Venue**.    The    Parties    agree    that    sole    and    exclusive jurisdiction and venue for any action or litigation arising from or relating to this Agreement shall be an appropriate federal or state court, located in the state of New.

12.    **Waiver of Right to Jury Trial.**    **THE    PARTIES    HEREBY    WAIVE TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND CONFIRMS THAT THEY HAVE ENTERED INTO THIS AGREEMENT AND THE WAIVERS SET FORTH HEREIN ON A KNOWING AND VOLUNTARY BASIS.**

13.    **Severability**. Any provision of this Agreement that is held by a court of competent jurisdiction to be prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability, without invalidating or rendering unenforceable the remaining provisions of this Agreement.

14.    **Successors and Assigns**.    This Agreement shall be binding on the successors and assigns of the Parties, and shall run to the benefit Crown's assignee of the successful bid for the Mortgaged Property at the Sale.  The Parties acknowledge that if Crown is the successful bidder at the Sale, it will be assigning its bid to Crown Real Estate Holdings, Inc.  This Agreement cannot be assigned by the Obligors with Crown's prior written consent.

15.    **No Waiver**.    The obligations of Lender hereunder shall not prejudice or act as a waiver of Lender's right to enforce any such right or remedy provided for in this Agreement, under the Final Judgment, the Law Division Judgment, the 2014 Loan, the $50,000 Loan, or the $200,000 Loan unless expressly set forth herein or expressly waived in writing signed by a duly authorized officer of Lender.

16.    **Counterparts**.    This    Agreement    may    be    executed    in    any    number    of counterparts, each of which shall be an original and all of which, taken together, shall constitute one and the same Agreement.  The executed signature pages from each actual, telecopied, or PDF counterpart may be joined together and attached together and shall constitute one and the same instrument.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

IN WITNESS WHEREOF, the parties have executed the Agreement as of the date first above written.

WITNESS/ATTEST:                          CROWN BANK

_____        By: _JACINTO RODRIGUES_
                                         Name:
                                         Title: _CEO_

WITNESS:                                 CAMP HARMONY, INC.

_____        By: _____
                                         Name:
                                         Title:

WITNESS/ATTEST:                          J & C CAPITAL, L.L.C.

_____        By: _____
                                         Name:
                                         Title:

WITNESS/ATTEST:                          JJC CAPITAL, L.L.C.

_____        By: _____
                                         Name:
                                         Title:

WITNESS/ATTEST:                          SCHOOL REALTY, L.L.C.

_____        By: _____
                                         Name:
                                         Title:

WITNESS/ATTEST:

_____        _____
                                         JEROME P. AMEDEO

7

STATE OF ___NJ___ )
                    :SS:
COUNTY OF _Somerset_ )

    I certify that on this __16__ day of May, 2018, personally appeared before me, __J. Amadeo__, and this person acknowledged under oath, to my satisfaction, that:

(a)    this person is a __Officer__ of Camp Harmony, Inc., the entity named in this document;

(b)    this person has the full authority to sign and deliver this document on behalf of Camp Harmony, Inc., and;

(c)    this document was signed and delivered by Camp Harmony, Inc. as its voluntary act duly authorized by Camp Harmony, Inc.

_____
          NOTARY PUBLIC

My commission expires on

_____, 201__

JOSHUA B. GREENBAUM
Commission # 2394611
Notary Public, State of New Jersey
My Commission Expires
March 30, 2020

STATE OF ___NJ___ )
                    :SS:
COUNTY OF _Somerset_ )

    I certify that on this __16__ day of May, 2018, personally appeared before me, __J. Amadeo__, and this person acknowledged under oath, to my satisfaction, that:

(a)    this person is a __Officer__ of J & C Capital, L.L.C., the entity named in this document;

(b)    this person has the full authority to sign and deliver this document on behalf of J & C Capital, L.L.C., and;

(c)    this document was signed and delivered by J & C Capital, L.L.C. as its voluntary act duly authorized by J & C Capital, L.L.C.

_____
          NOTARY PUBLIC

My commission expires on

_____, 201__

JOSHUA B. GREENBAUM
Commission # 2394611
Notary Public, State of New Jersey
My Commission Expires
March 30, 2020

8

STATE OF ___*NJ*___            )
                                                :SS:
COUNTY OF *Somerset*    )

    I certify that on this ___*16*___ day of May, 2018, personally appeared before me, *J. Amodeo*___, and this person acknowledged under oath, to my satisfaction, that:

(a)    this person is a ___*Officer*___ of JJC Capital, L.L.C., the entity named in this document;

(b)    this person has the full authority to sign and deliver this document on behalf of JJC Capital, L.L.C., and;

(c)    this document was signed and delivered by JJC Capital, L.L.C. as its voluntary act duly authorized by JJC Capital, L.L.C.

                                  NOTARY PUBLIC

My commission expires on

_____, 201__

JOSHUA B. GREENBAUM
Commission # 2394611
Notary Public, State of New Jersey
My Commission Expires
March 30, 2020

STATE OF ___*NJ*___            )
                                                :SS:
COUNTY OF *Somerset*    )

    I certify that on this ___*16*___ day of May, 2018, personally appeared before me, *J. Amodeo*___, and this person acknowledged under oath, to my satisfaction, that:

(a)    this person is a ___*Officer*___ of School Realty, L.L.C., the entity named in this document;

(b)    this person has the full authority to sign and deliver this document on behalf of School Realty, L.L.C., and;

(c)    this document was signed and delivered by School Realty, L.L.C. as its voluntary act duly authorized by School Realty, L.L.C.

                                  NOTARY PUBLIC

My commission expires on

_____, 201__

JOSHUA B. GREENBAUM
Commission # 2394611
Notary Public, State of New Jersey
My Commission Expires
March 30, 2020

9

STATE OF __NJ__                )
                                       :SS:
COUNTY OF _Somerset_      )

    I certify that, on this __11__ day of May 2018, personally appeared before me, Jerome P. Amedeo Diamond, personally known to me, or proved to me on the basis of satisfactory evidence, to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same.

                          NOTARY PUBLIC

My commission expires on
_____, 201__

```
JOSHUA B. GREENBAUM
Commission # 2394611
Notary Public, State of New Jersey
My Commission Expires
March 30, 2020
```

10

# EXHIBIT C

# CHASE *for* BUSINESS

Printed from Chase for Business

## Check

Front



```
                                                                    2464
              CAMP HARMONY
               P.O. BOX 4305
               WARREN, NJ  07059                    9/13/18        51-231
                                                     date           212

Pay to the order of   Crown Bank                          | $ 40,000

Forty Thousand ∞/100                                               dollars

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

for  September '18                        [signature]

 ⑈002464⑈  ⑆021202337⑆  8 4 2 67151⑈
```

Back



```
                                >031207694<
                                Crown Bank #008
                                2018-09-20
                                0008592919
                                Batch 44092699
```

| Post date | Check # | Check amount |
|---|---|---|
| Sep 20, 2018 | 2464 | $40,000.00 |

# EXHIBIT D

### *Lease Agreement*

This Lease Agreement (The "Lease made May 1, 2015 between Crown Real Estate Holdings INC  The "Landlord", located at 27 Prince Street, Elizabeth NJ 07208 -and-Camp Harmony, Inc, J&C Capital, LLC, JJC Capital, LLC, School Realty, LLC & Jerome P Amadeo the tenant, located at 25 Harmony Rd., Warren, NJ 07059

### Lease Data

---

**Rental Space (see Par. 1): 11-13,15, 19, 25 & 5 Harmony Rd., Warren, NJ 07059**

---

**Use of Rental Space (See Par. 3): Tenant will use property as School/ Summer Camp/**

---

| Lease Term (See Par. 2 & 27) | Ten (10) years, |
| --- | --- |
| | plus two (2) ten (10) year optional extensions |

---

| Commencement Date (See Par.2) | 08/15/2018 |
| --- | --- |

---

| Expiration Date (See Par. 2) | 07/15/2028 |
| --- | --- |

---

**Total Rent for Lease Term (See Par. 4)**

---

**Rent- Monthly Installments (See Par.4)**

1st -yr

| October | $40,000 |
| --- | --- |
| November | $40,000 |
| December | $40,000 |
| January | $60,000 |
| February | $60,000 |
| March | $60,000 |
| April | $50,000 |
| May | $50,000 |
| June | $50,000 |
| July | $50,000 |
| August | $50,000 |
| September | $50,000 |

5% increase every year after the 1st year

---

**Additional Rent Percentage for all Pro Rate Charges (See Par.5)**

---

**Taxes for Premises for Year (year) (See Par.5) as per Township of Warren RE Tax records**

---

**Insurance  $1,000,000 each occurrence General Liability Insurance , $5,000,000 General Aggregate coverage is required (see Par.5)**

---

| Security (see Par.4h) | $50,000.000 |
| --- | --- |

---

**Real Estate Broker:  NONE**

---

| Paragraph: | Title: | Page No. |
|---|---|---|
| * | Lease Data...................................... | 1 |
| 1. | Rental Space................................ | 3 |
| 2. | Term of Lease............................. | 3 |
| 3. | Use of Rental Space...................... | 3 |
| 4. | Rent for Rental Space................... | 3 |
| 5. | Additional Rent for Rental Space Based Upon Real Estate Taxes and Multi-Peril Insurance......... | 5 |
| 6. | Assessments................................. | 5 |
| 7. | Insurance.................................. | 5 |
| 8. | Utilities.................................... | 6 |
| 9. | Condition, Repair, Maintenance and Care of Rental Space................................ | 6 |
| 10. | Tenant's Compliance With Laws, I.S.R.A., and Rules and Regulations......................... | 8 |
| 11. | Sprinkler System Requirements.................... | 8 |
| 12. | Alterations, Additions and Improvements......... | 9 |
| 13. | Mechanics' Liens...................................... | 9 |
| 14. | No Right of Tenant to Assign or Sublet.............. | 9 |
| 15. | Fire and other Casualty................................. | 9 |
| 16. | Landlord's Right of Access to Rental Space.......... | 10 |
| 17. | Signs.................................................. | 10 |
| 18. | Limitation of Liability of Landlord..................... | 10 |
| 19. | Indemnity of Tenant....................................... | 10 |
| 20. | Mortgage Priority......................................... | 10 |
| 21. | Abandonment of Equipment............................. | 11 |
| 22. | Quiet Enjoyment.......................................... | 11 |
| 23. | Tenant's Estoppel......................................... | 11 |
| 24. | Eminent Domain........................................... | 11 |

25.          Operating Statements...................................      `11

26.          Landlords Right to Re-enter.............................      11

27.          Default and Termination..................................      11

28.          Bankruptcy of Tenant......................................      12

29.          Force Majeure..............................................      12

30.          Waiver of Right of Redemption.............................      12

31.          Hold Over Rent.............................................      12

32.          Notices.....................................................      12

33.          Condition of Rental Space at End of Lease Term...........      12

34.          Interpretation and Construction of the Lease..............      13

35.          Work by Landlord..........................................      13

36.          Work by Tenant............................................      13

37.          Option......................................................      14

38.          Prior Lease.................................................      14

39.          Water Consumption.........................................      14

1.   <u>Rental Space.</u> The Landlord leases to the Tenant and the Tenant rents from the Landlord, in accordance with the provisions of the leases, the Rental Space described on page 1 land and buildings thereon known as (the "Premises"),

2.   <u>Term of Lease.</u> The Lease Term set forth on page 1 will be for the number of years set forth on page 1 and will commence of the Commencement Date set forth on Page 1 and end at noon on the Expiration Date set forth on page 1

The landlord will not be liable to the tenant for the failing to give the tenant possession of the Rental Space on the Commencement Date because the Rental Space is not ready for occupancy, the prior tenant is wrongfully holding over, any other party is wrongfully in possession of the Rental Space, or for any other reason. In any event, the Lease Term will not commence until possession of the rental Space is made available for the tenant.

It is understood and agreed that this lease shall be binding and in full force and effect only when both Landlord and Tenant execute and exchange leases and the Tenant pays the first month[1]s rent and security. If the rent and security is not paid on 24 hours oral notice, then this lease shall be null and void.

3.   <u>Use of Rental Space.</u> Use of Space to be used as set forth on page 1.

        (a). <u>Tenant's Representation.</u> The Tenant will use and occupy the Rental Space for no  purpose other than as set forth on page 1.

        (b). <u>Unlawful Disreputable or Extra Hazardous Use.</u> The Tenant will not occupy or use any part of the Rental Space or permit or suffer the Rental Space to be occupied or used for any purpose other than as provided above or for purpose deemed by the Landlord to be unlawful, disreputable, or extra hazardous or in violation of the certificate of occupancy affecting the Rental Space

4.   <u>Rent.</u>

        (a) <u>Fixed Net Rate.</u> The Tenant will pay the Landlord the Fixed Net Rent set forth on page 1, in the equal Monthly Installments set forth on page 1, and as per attached hereto on the fifteenth day of each month in advance, with the exception that the first Monthly Installment will be paid upon execution and delivery of the Lease

        (b) <u>Additional Rent.</u> The Tenant will pay the Landlord, as additional rent (the "Additional Rent of money on the Tenant's part to be paid pursuant to the provisions of the Lease.

        (c) <u>No Setoff; Application and Effect of Payment of Rent.</u>

                (i) <u>No Setoff.</u> The Tenant will pay the Landlord the Fixed Rent and Additional Rent without abatement, deductions, or setoff, irrespective of any claim that the Tenant may have against the Landlord; and this provision is independent of any of the provisions of the Lease.

                (ii) <u>Application and Effect of Payment.</u> No payment by the Tenant or receipt by the landlord of an amount less than the Fixed Rent or the Additional Rent will be deemed anything other than a payment on an account of the earliest Fixed Rent or Additional Rent due from the Tenant. No endorsements or statements on any check, or any letter accompanying any check for payment of Fixed

Rent or Additional Rent will be deemed an accord and satisfaction by the Landlord, and the Landlord may accept any payment from the Tenant, without prejudice to the Landlord's right to pursue any right or remedy provided to the Landlord under Lease or by Law.

(d) <u>Late Charge</u>. If the Tenant fails to pay any Monthly Installment of Fixed Rent or any Additional Rent within Five (5) days of its due date, the Tenant will pay the landlord, as Additional Rent, a late charge of 10% per month of such sum.

(e) <u>Reimbursement of Landlord's Expenses in Enforcing Lease</u>. If the Tenant fails to perform any obligation of the Tenant pursuant to the lease, the Landlord may, but without the obligation to do so, perform such obligation at the expense of the Tenant, and the Tenant will reimburse the Landlord for the expense, as Additional Rent, within five (5) days of the Landlord's demand.

(f) <u>Landlord's Legal Expenses in Enforcing Lease.</u> The Tenant will, within five (5) days of demand by the Landlord, reimburse the Landlord, as Additional Rent, for all reasonable attorneys fees and costs incurred by the Landlord in enforcing the Tenant's obligations under the Lease.

(g) <u>Place of Payment of Rent</u>. The Fixed Rent and Additional Rent will be paid by the Tenant to the landlord at 27 prince Street, Elizabeth NJ 07208, or at such other places as the Landlord may notify the Tenant.

(h) <u>Security</u>. The Tenant has deposited with the Landlord, the security set forth on page 1, as security for the full and faithful performance by the tenant of the Tenant's obligations under the lease or any renewal of the lease term.

The Security will be returned to the tenant without interest, only after the expiration date set forth on page 1, or if the lease is renewed, only after the expiration date of the renewal of the lease term, provided that the tenant has fully and faithfully performed all of the provisions of the lease applicable to the tenant and delivered possession of the rental space to the landlord.

The Landlord may. If the landlord so elects, have recourse to the security to make good any default by the Tenant for an expense which the Landlord may incur by reason of the tenants default, in which even the tenant will, within five (5) days of demand of Landlord, restore the security to its full amount. The failure of the Tenant to restore the security to its full amount will entitle the landlord to the same rights and remedies the Landlord has for non-payment of the Fixed Rent by the Tenant.

If the Landlord's interest in the Rental space if sold or transferred, the Landlord will assign the security to the transferee, in which event, the transferee will be obligated for the repayment of the security to the Tenant and the Tenant releases Landlord of the obligation to return the Security. The forgoing provisions will be applicable to every sale of transfer of title to the Rental Space.

5. <u>Additional Rent for Rental Space Based Upon Real Estate Taxes and Multi-Peril Insurance Premiums.</u>

(a) <u>Additional Rent for Real Estate Taxes</u>. The Tenant shall pay the Landlord, as Additional

Rent, real estate taxes monthly.

(b) Additional Rent for Insurance. The Tenant shall pay the Landlord, as Additional Rent, insurance as set forth on page 1.

6. Assessments. The tenant will pay the Landlord, as Additional Rent, within thirty (30) days of demand by the Landlord, The Tenant's 'share" of any assessments for improvements assessed and levied against the Premises during the Lease Term by the municipality in which premises is located or imposed by any other governmental authority having jurisdiction over the premises. The Tenant's "pro rata share" will be equal to the total assessment times a fraction, the numerator of which will be the number of square feet of the Rental Space, and the denominator of which will be the number of square feet of the premises. The computation above shall not be made applicable if the assessment is a result of work performed solely for the benefit of the Tenant.

7. Insurance.

(a) Liability Insurance. The Tenant will, at the Tenant's own expense, obtain and keep in force, general public liability insurance with an insurance company and through an insurance broker acceptable to the Landlord, insuring the Landlord and, Tenant individually and doing business as Camp Harmony and The Orchard Academy,  against liability or claims liability for bodily injury, death or property damage, arising out of, occasioned by or resulting from any accident or any other occurrence in or about the Rental Space, including any sidewalks, parking areas or driveways adjoining the building or which the Rental Space is part. The insurance will provide coverage in at least the amount set forth on page 1 . The Landlord may increase the limits of the insurance coverage from time to time if circumstances at the time reasonably warrant in increase, upon notice to the tenant, and the Tenant will promptly supply such increased coverage.

The Insurance policies will state that the Insurance Company cannot cancel or refuse to renew the policy without at least twenty (20) days prior written notice to the Landlord.

The Tenant will deliver the original insurance policy or policies to the landlord, together with evidence of payment of the premium, on or before the Commencement Date. The Tenant will deliver a renewal policy to the landlord, together with proof of payment of the premium, not let than fifteen (15) days before the expiration dare of each policy.

The Tenant shall pay the full insurance premium and list Crown Real Estate Holdings, Inc. as the Landlord.

(b) Unavailability of Fire Insurance; rate Increases.

If, due to the Tenant's use of the Rental Space, the Landlord cannot obtain and keep in force fire insurance coverage for the Rental Space or the building of which the Rental Space is part, in an amount acceptable to the Landlord, the Landlord may terminate the Lease on sixty (60) days prior notice to the Tenant.

If, Due to the Tenant's use of Rental Space, the Landlord's Insurance Premiums for the premises is increased, the tenant will pay the increased premium to the Landlord, as additional Rent, upon demand. It is understood and agreed that any increase in premiums due to premiums due to other tenant's shall not cause and increase in tenant's premium payments.

(c) Waiver of Subrogation.  The Tenant releases the Landlord from any liability arising out of a loss covered by any Insurance Policy, or other similar type of insurance, insuring the Tenant's property at the Rental Space. The Tenant will, on or before Commencement Date and on or before the renewal dates of each policy of insurance, furnish the Landlord with a certificate from each insurance carrier waiving the insurance carrier's right of subrogation.

8. Utilities.

(a) Heat Supplied by Tenant.  The Tenant will, at the Tenant's expense, provide the Rental Space with heat during the hating season and shall maintain ample heat to prevent freezing of pipes/

(b) Other Services Supplied by the Tenant.  The Tenant will, at the Tenant's own expense, pay for all electric, gas, sprinkler systems standby water, water and sewer charges, snow removal for roadways and sidewalks adjoin the building of which the Rental Space is a part and the walkways leading to Rental Space, any other utilities required or used by the Tenant at the Rental Space during the Lease Term. Any of the above items billed to the Landlord shall be billed pro rata to tenant based on its percentage of space occupied. Items currently billed to Landlord are

1. Sanitation water

2. Sprinkler standby water

3. Snow Removal

4. Sweeping, cleaning and landscaping service for all common land area

6 Common area maintenance and common are electricity

7. Weed Control

8. A.D.T

9. A.D.T telephone

10. Electric and Gas

*In case there is no Electric or Gas meter in location, you will be prorated by the square footage usage. Deposit for prorated Gas and Electric might be required as a down payment for Utilities.

If the Tenant requires a utility service in excess of the capacity of the utility service at the Rental Space, the Tenant will, at its own expense, subject the first obtaining the written consent of the Landlord, install such additional utility service.

9. Condition, Repair, Maintenance and Care of Rental Space.

    (a) Condition of Rental Space Upon Commencement of the Lease.

    The Tenant has inspected the Rental Space and the Industrial Center prior to entering into the Lease and accepts the Rental Space "as is", except as specified elsewhere herein, and enters into the Lease without any representation on the part of the Landlord or any representative, agent or employee of the Landlord as to the condition of the Rental Space and the Premises, or the rents, lease, expenses of operation or any other matter or thing affecting or relating to the Rental Space or the Premises, including without limitation, the indoor air quality of the rental space, except as expressly set forth in the lease. No rights, easements, or licenses are acquired by the Tenant by implication or otherwise, except as expressly set forth in the Lease. The premises shall be vacant, in broom clean condition, and free of debris at the commencement of the lease.

    (b) Tenant's Obligation to Repair, Maintain and care for the Rental Space.

    The Tenant will, at the Tenant's own expense, take good care of the Rental Space, including without limitation, the personal and overhead doors, windows, fixtures, equipment, systems, alterations, additions and improvements, annexed to forming part of the Rental Space, and make all repairs and replacements to them, including painting, and keep them in a good condition and state of repair. The tenant will also, at the tenants own expense, keep and maintain the exterior of demised premises i.e dock area, premises entrance and interior of the Rental Space in clean condition, free from debris, refuse, vermin and insects. No outside storage of materials or pallets shall be permitted at any time. Tenant shall maintain at least 45 degrees temperature to prevent freezing pipes. At the expiration or sooner termination of the Lease Term, the Tenant will deliver the exterior and interior of the Rental Space broom clean and in good condition, and state of repair, wear and tear from reasonable use excepted.

    (c) Damage Caused by Tenant. In the case of any damage to the Rental Space of the Premises, caused by any act of omission of the Tenant, or the agents, representatives, employees or invitees of the Tenant, the Tenant will, at the Tenant's own expense, promptly repair the damage

    (d) No Obstruction to Sidewalks, Driveways, Parking Areas and Yards.

    The Tenant will keep the sidewalks and driveway adjoining the building of which the Rental Space is a part and the entrances, hallways, and stairs of the building of which the Rental Space is a part, clean and free from pallets, trash, debris, snow, ice and weeds

    Landlord shall give Tenant 24 hour faxed or written notice to remove pallets, debris, equipment, non-operation or abandoned vehicles, production materials, finished or unfinished products from any exterior area of demise premises, to include loading docks, common area, parking lots, lawn areas, sidewalks and driveways

    If Tenant ails to remove noticed items, said items will be removed by Landlord at Tenant's cost

and expense for labor, trucking and dumping fees. The cost and expense will be billed and will be due and payable on the first of the next month. Failure to pay will be a default in Lease and a cause for termination thereof.

(e) The Tenants Negative Covenants. The Tenant will not injure, deface, permit waste or otherwise harm all or any part of the Rental Space, permit any public or private nuisance at the Rental pace, keep anything in the Rental Space which is flammable, dangerous or explosive, or which might increase the risk of damage by fire or other casualty, permit the omission of any objectional noise or odor from the rental Space, use the electric, plumbing and other systems in the Rental Space in an unsafe manner, or use more electricity than the wiring or feeders to the Rental Space can safely carry.

10. Tenant Compliance with Laws, I.S.R.A, and Rules and Regulations.

(a) Tenant's Compliance with laws.  The Tenant will, at the Tenant's own expense, promptly comply with all laws, orders, ordinances, procurement of permits required by law, to include air pollution and storm weather permits and regulations of all federal, state, county and municipal authorities having jurisdiction over the Industrial Center ( the "laws") and with any directive made pursuant to the laws of any public office or officer, and the requirements of any insurance carrier insuring the Rental Space or the Landlord, the New Jersey Board of Fire Underwriters or the New Jersey Insurance Exchange.

(b) Tenant's Compliance with Industrial Site Recovery Act.

The Tenant will, at the Tenant's own expense, comply with the Industrial Site Recovery Act, N.J.S.A. 13:1k-6 et seq.(the "Act") and all regulations promulgated pursuant to the Act. The Tenant will, at the Tenant's own expense, provide all information requested by the Landlord for the preparation of submissions, declarations, reports and plans pursuant to the Act. If the New Jersey Department of Environmental Protection determines that a cleanup plan be prepared and that a cleanup be undertaken because of any spills or discharges of hazardous substances or wastes at or in or about the Rental Space or the building in which the Rental Space is a part, or the Industrial Center, resulting from the Tenant's use and occupancy at the Rental Space, then the Tenant will, at the Tenant's own expense, prepare and submit the required plans to carry out the approved plans.

The Tenant will indemnify, defend and save the Landlord harmless from and against any and all fines, suites, procedures, penalties, claims, actions, liabilities, losses and cost of any kind, including without limitation, attorney's fees, arising out of, or in any way connected with any spills or discharges of hazardous substances or wastes at, in or about the Rental Space or the building or which the Rental Space is a part, or the Premises, which are caused by or resulting from the Tenant's use and occupancy.

(c) Continuing Obligations of Tenant. The Tenant's obligations pursuant to this paragraph 10 will continue irrespective of the Lease Term for so long as the Landlord remains  responsible for any spills or discharges of hazardous substances or wastes at the Rental or the building of which the Rental Space is a part or the Premises, relating to the Tenant's use and occupancy of the Rental

Space.

(d) <u>Notice of Violations.</u>  If the Tenant receives a notice of any violation of any of the present or future laws, applicable to the Rental Space or the Tenant's use and occupancy of the Rental Space, the Tenant must give prompt notice of it to the landlord.

(e) <u>Survival</u>. The provisions of this paragraph will survive the expiration or sooner termination of the lease.

11. <u>Sprinkler System.</u>  If the Premises has a sprinkler system for the demised premises. It is understood and agreed that Landlord will maintain sprinkler system. Tenant to be responsible for any damage to the pipes or freezing of the sprinkler pipe system caused by tenant, its employees or its guest. Tenant to maintain heat to prevent freezing of sprinkler system.

12. <u>Alterations, Additions and Improvements.</u>

(a) <u>No alterations, Additions and Improvements to the Property of the Landlord.</u>  No alterations, additions, or improvements will be made by the Tenant to the Rental Space without the Landlords prior written consent.

(b) <u>Alterations, Additions and Improvements to the Property of the Landlord</u>

All alterations, additions, and improvements installed by the Tenant in the Rental Space Will immediately become the sole property of the Landlord. However, the Tenant will, at the Tenant's own expense, upon demand of the landlord, remove any alteration, addition, or improvements prior to the expiration or sooner termination of the Lease Term, and restore the Rental Space to it original condition. Nothing in this paragraph will obligate the Landlord to consent to any alteration, addition, or improvement requested by the Tenant.

13. <u>Mechanics' Liens.</u>  The tenant will not permit any mechanics' lien or other lien to be filed against the Rental Space or the building of which the Rental Space is part, or Industrial Center. If any mechanics' lien or other claim is filed, the Tenant will, at the Tenant's own expense, have it promptly removed.

14. <u>No Right of Tenant to assign or Sublet.</u>  The tenant will not do any of the following without the Landlord's prior consent: (a)n assign the Lease (if the Tenant is a corporation, then the sale of the majority of its shares will be treated as an assignment); (b) sublet all or any part of the Rental Space; or (c) permit any other person or business to use the Rental Space. Said written consent shall not be unreasonably withheld. In the event of a sublet, sublease or assignment of Lease, any increase in rent above sum due Landlord will inure to benefit of Landlord and not the Tenant.

15. <u>Fire and other Casualty</u>.

(a) <u>Notice from Tenant</u>. The tenant will notify the Landlord at once of any fire or other casualty at the Rental Space

(b) <u>Partial Damage</u>. If the Rental Space is partially damaged by fire or other casualty, the

Landlord will repair it within a reasonable time, and the Tenant will continue to be obligated to pay Fixed Rent and Additional Rent.

(c) Material Damage. If the rental space or the building of which the Rental Space is a part is so damaged by fire or other casualty that, in the opinion of the Landlord, it cannot be repaired within ninety (90) days of the fire or other casualty , the Landlord will notify the Tenant and either party will have the right to terminate the Lease, upon notice to the other , given within thirty (30) days of the Landlord's notice, in which event the Tenant will pay the Landlord, all fixed Rent and Additional Rent due under the Lease to the date of the fire or other casualty. If neither party elects to terminate the lease within the thirty (30) day period, then the Landlord will repair the Rental Space or the building of which the Rental Space is a part , as the case may be, and the Tenant's obligation to pay Fixed Rent and Additional Rent will Cease until such time as the Rental Space becomes usable.

(d) Damage Caused by Tenant. Notwithstanding any contrary provision set forth in the Lease, if the fire or other casualty is caused by the Tenant, or any agent, employee, representative or invitee of the Tenant, the Tenant's obligation to pay the Fixed Rent an d Additional Rent will continue and the Tenant will be liable to the Landlord for all damages suffered by the Landlord as a result of the fire or other casualty, which are not covered by insurance.

16. Landlord's Right of Access To rental Space. The landlord and the Landlord's agents, representative, employees and invitees will have right of access to the Rental Space, on reasonable notice to the Tenant, to: (a) inspect the Rental Space; (b) make necessary repairs, alterations, additions or improvements to the Rental Space; for the benefit of Tenant or other Tenants; (c) supply services; and (d) to show the Rental Space to prospective buyers, mortgage lender, contractor's and insurers.

The Landlord may show the Rental Space to rental applicants or potential buyers, on reasonable notice to the Tenant during the term of the lease.

The landlord may enter the Rental Space, at any time, without notice to the Tenant, in case of emergency.

17. Signs. The Tenant will not place any signs in or about the Rental Space without first obtaining the Landlord's written consent. All permitted signs must conform with all applicable laws of authorities having over the Rental Space.

18. Limitation of Liability of Landlord

(a)  Non-liability of Landlord. The Landlord will not liable for any damage of injury which may be sustained by the Tenant or any other person in or about the Rental Space, or the building of which the Rental Space is a part, or the Industrial Center, resulting from failure, breakage, leakage or obstruction of water, plumbing, steam, sewer. Waste or spoil pipes, roof, drains, leaders, gutter, valleys, downspouts, or the like; or any electrical, gas sprinkler, air conditioning , heating, boilers, pressure vessels or any other system; or of any elevators of hoisting equipment; or by reason of the elements; or resulting from agents, employee, or invitees, or on the part of any other Tenant of the Industrial Center or such tenant's agents, employees, or invitees; or attributable to any interference

with, interpretation of, or failure of, any services to be furnished or supplied to the Tenant.

(b) Limit of the Landlord's liability . The liability of the Landlord for the failure of the Landlord to perform any obligation of the Landlord under the Lease will be limited solely to reasonable cost of performance and the satisfaction of such liability will be limited solely to the equity of the Landlord in the Industrial Center.

19. Indemnity of tenant. The Tenant will indemnify, defend, to include legal fees, and save the Landlord, its principles and managing agent, harmless from and against: (a) any claims or liability for lose to property, or injury to any person, in or about the Rent Space, or the building of which the Rental Space is a part, or the Industrial Center, caused by any act of omission of the Tenant, agent, representative, employee or invitee of the Tenant, or of any other person entering the Rental Space or the building of which the Rental Space is a part, or the Industrial Center, under an express implied invitation from the Tenant, or arising out of the use and occupancy of the Rental Space by the Tenant, or arising out of default by the Tenant in the performance of any of the Tenant's obligations under the Lease; and (b) any fines, suits, procedures, claims or actions of any kind arising out of the use and occupancy of the Rental Space by the Tenant, or arising out of the conduct of the Tenant's business, (c) excluded therefrom are claims caused by failure of Landlord to perform Landlord responsibilities after due notice and according to terms of lease.

20. Mortgage Priority. The Lease is not a lien against the Rental Space and present and future institutional mortgages will be superior and prior in lien to the Lease, irrespective of the date of recording. Within five (5) days of demand of the Landlord, the Tenant will execute any instrument, without cost to the Landlord, which may be deemed necessary by the Landlord, or any institutional mortgagee, to further effect the subordination of the Lease to a mortgage. The Tenant appoints the Landlord as the Tenant's attorney in-fact, irrevocably, to execute and deliver any such instrument.

21. Abandonment of Equipment. Any property of the Tenant, not removed by the Tenant (a) upon the expiration or sooner termination of the Lease Term; or (b) upon quitting, vacating or abandoning the Rental Space; or (c) upon the Tenant's eviction, will be considered abandoned and the Landlord will have the right, without any notice to the Tenant, to sell or otherwise dispose of the property, at the expense of the Tenant, and the Landlord will not be accountable to the Tenant for any part of the proceeds of any sale

22. Quiet Enjoyment. Upon performing the provision of the Lease, the tenant will have quiet enjoyment of the Rental Space, subject to the provision of the lease.

23. Tenant's Estoppels. Within ten (10) days of the Landlord's demand, which demand may be made on multiple occasions during a lease year, the Tenant will, at the Tenant's own expense, sign and deliver to the Landlord, a typical normal written estoppels certification in the form deemed necessary by the Landlord. The estoppels certificate will also contain a list of the property affixed to the Rental Space which is owned by the Tenant.

24. Eminent Domain. If all of the Rental Space or the building of which the Rental Space or the building of which the Rental Space is a part, or the Premises, is taken by eminent domain or in lieu of it, then the Lease will terminate from the time of possession is delivered to the condemning

authority and the Tenant will be responsible to pay the Fixed Rent and Additional Rent to and including this date. The entire payment for the taking will belong to the Landlord and the Tenant will make no claim for the value of the Lease for the remaining portion of the Lease term.

If any portion of the Rental Space or the building of which the Rental Space is a part, or the Premises, is taken by eminent domain or in lieu of it, which cause the Rental Space to become untenable, then either party may terminate the lease on notice to the other, given thirty (30) days of such taking, in which event the Lease will terminate from the time possession is delivered to the condemning authority and The Tenant will be responsible to pay Fixed Rent and Additional Rent to and including this date.

If any portion of the Rental Space or the building of which the Rental Space or the building of which the Rental Space is a part, or the Premises, is taken by eminent domain or in lieu of it, which does not cause the Rental Space to become untenantable, or if neither party exercises its right to terminate the Lease within the thirty (30) day period set forth above, then the Lease will continue/

25. <u>Operating Statements</u>. Within five (5) days of the Landlords demand, which demand may be made on multiple occasions during a lease year, the Tenant will, at the Tenant's own expense, provide the landlord with operating statements with respect to: (I) The Tenant's operation at the Rental Space; and (ii) the operations of the Tenant, and, if applicable, any parent of affiliated entity of the Tenant, which Operates of has subsidiaries that operate, comparable businesses at any other location.

26. <u>Landlord's Right to Re-Enter.</u> If the Tenant defaults under any provisions of the Lease applicable to the Tenant, then it is lawful for the Landlord to re-enter the Rental Space to again posses and enjoy the Rental Space.

27. <u>Default and Termination.</u>

(a) <u>Landlord's Right to Terminate</u>. The Landlord has the option to terminate the Lease upon five (5) days prior notice to the Tenant in the event: (i) the Tenant defaults in the performance of any provision of the Lease; or (ii) the Tenant vacates or abandons the Rental Space; or (iii) the Tenant is evicted from the Rental Space by summary proceedings or otherwise; or (iv) proceedings are instituted by or against the Tenant in bankruptcy, insolvency or receivership; or (v) the Tenant makes an assignment for the benefit of creditors, (vi) If Landlord sells the property and buyer requires property to be delivered vacant, Tenant shall have 6 months from the date of notice to vacate the premises and lease will be terminated.
The lease will terminate on the date fixed in the notice of termination.

(b) <u>Remedies Upon Tenant's Default</u>. If the tenant defaults in the performance of any provision of the Lease, or vacates or abandons the Rental Space, or is evicted from the Rental Space by summary proceedings or otherwise, the Landlord may, in addition to any remedies provide in the Lease or permitted by law, either by force or otherwise, without being liable for prosecution of damage, enter the Rental space and take possession of it as the Landlord's own property and lease and

receive the rents from the Rental Space. The Tenant is liable for all expenses, reasonable attorney's fees and cost, as the Landlord may out in entering and repossessing the Rental Space and making repairs that may be necessary. The Tenant will also remain liable not only for all Fixed Rent and Additional Rent reserved under the Lease, and the rents, if any, received by the landlord during the remainder of the unexpired term of the Lease, after deducting the expenses, fees and costs, with the difference to be paid as such deficiencies arise and are ascertained each month. In no event will the Tenant be entitled to any surplus.

28. Bankruptcy of Tenant.

(a) If the Tenant files or there is filed against the Tenant. A petition in bankruptcy or Arrangement, or if the Tenant is adjudicated a bankrupt, or makes an assignment on behalf of creditors, or takes advantage of any insolvency act, such event shall be deemed a default by the Tenant under the lease.

(b) No receipt of money by the debtor from any receiver, trustee, custodian or debtor-in Possession will reinstate, continue to extend the Lease Term or affect any notice given to the Tenant or to any receiver, trustee, custodian or debtor-in-possession, or operate as a waiver or estoppel; of the right of the Landlord to recover possession of the Rental Space for any of the causes set forth in the Lease.

29. Force Majeure. If the landlord is delayed, hindered in, or prevented from performing any obligation required of the Landlord under the lease, by reason of strikes, lockouts, labor troubles, inability to procure materials, failure of power, act or failure to act or default of any other party, war, or any other reason beyond the control of the landlord, then the performance of the obligation will be excused for the period of the delay and the period for the performance of any such obligation will be extended for a period equivalent to the period of the delay.

30. Waiver of Right of Redemption. INTENTIONALLY DELETED

31. Hold Over Rent. If the tenant holds possession of the Rental Space after the expiration or sooner termination of the Lease Term, the Tenant will become a Tenant from month-to-month and be bound by the applicable provisions of the Lease, but at a monthly Fixed Rent of 200% of the monthly Fixed Rent for the last month of the Lease Term, or any renewal term of the Lease, as the case may be, payable on the first day of each month in advance and the month-to-month tenancy will continue until terminated by the Landlord, or until terminated by the Tenant upon at least sixty (60) days prior notice to the landlord

32. Notices. All notices and exercises of options required under the Lease must be given in writing and sent by United States certified or registered mail, postage prepaid, return receipt requested, or by prepaid Federal Express (or a comparable overnight delivery service), to the party to whom it is directed at the address shown on page 1 of the Lease, or to such other address as may be subsequently designated by either party by notice given in the same manner. Notice will be deemed given when received, or if refused, when delivery is refused.

33. Condition of Rental Space at End of lease Term.  At the end of the Lease Term or sooner termination of occupancy for any reason, The Tenant will: (a) leave the Rental Space broom clean; (b) remove all the of the Tenant's property, fixtures and equipment; (c) remove all signs and restore the portion of the Rental Space on which they were placed;  (d) repair all damage caused by moving; and (e) return the Rental Space to the Landlord in the same condition as it was at the beginning of the Lease Term, except for normal wear and tear.

34. Interpretation and Construction of the Lease

(a)  Landlord Defined. The term the "Landlord" as used in the Lease, means and includes only the owner or owners of the Rental Space at the time in question. In the event of a sale or other transfer of the Rental Space, the Landlord will be released and discharged from the provisions of the Lease thereafter accruing, but such provisions will be binding upon each new owner, while owner of the Rental Space/

(b)  Validity of Lease. The provisions of the Lease are severable. If any clause or provisions of the lease is adjudged to be invalid or unenforceable by a court of competent jurisdiction or by operation of an applicable law, it will not affect the validity of the other provisions of the Lease which will remain in effect

(c)  No Waiver. A failure of the Landlord to enforce strict performance by the Tenant of any provision of the lease will not be waiver or relinquishment at the time or in the future by the Landlord of such provision

(d)  Entire Agreement. The Lease contains the entire agreement between parties. No Representative, agent, or employee of the Landlord has been authorized to make any representations, warranties, or promises with respect to the letting, or to vary, alter, or modify the provisions of the Lease. No additions, changes, modifications, renewals or extensions of the Lease will be bingin unless reduced to writing and signed by both parties

(e)  Effective Law. The Lease is to be governed by, constructed and enforced in accordance with the laws of the State of New Jersey.

(f)  Commercial Lease.  The lease is to be constructed as a commercial lease

(g)  Captions. The captions of the paragraphs in the Lease and the Table of Contents are for reference purposes only and do not in any way affect the meaning or interpretation of the Lease

(h)  Obligations Joint and Several. If there is more than one party Tenant, their obligation under the Lease will be joint and several. If the Tenant is a partnership, the obligations of the Tenant under the lease will be joint and several obligations or each of the partners and the partnership.

(i)  Injunctive Relief. Any violation, attempted violation, or threatened violation, of any

provision on the lease by the Tenant may be remedied by the Landlord through injunction, which will be cumulative remedy in addition to any other remedy available to the Landlord under the Lease or by any existing or future law.

     (j)  Legal Proceedings.  If the Landlord institutes summary dispossess proceedings against the Tenant by reason of the Tenant's default under the Lease, the Tenant waives the right to transfer the proceeding to the Law Division of the Superiror Court of New Jersey and waives the right to impose a counterclaim in such proceeding. The parties waive trial by jury with respect to any action instituted concerning the lease.

35. Work by Landlord.  **NONE**

36. Work by Tenant. **NONE**

     1.  Tenant to supply and install fire extinguishers prior to occupancy

37.  Options. Landlord will provide Tenant with two (2) ten (10) year options to renew lease, at the terms agreed at that time.  If Tenant intends to exercise their option to extend lease, Tenant shall give Landlord 6 months prior to the expiration date of the lease.  Rent at that time will be assessed at Market Value but never less than the last payment under the original terms.

     (a) Option Clause :NONE

     (b) Net Rent.  Net rent for extended term shall be as shown in attached hereto and made a part hereof

38. Prior Lease. **NONE.**
  It is understood and agreed that prior leases dated _____and modifications thereof on ___
_____ and _____and _____ shall be terminated, voided and shall have no further force or effect. Lease commencing __ _____shall be in full force and effect

39. Water Consumption. Tenant shall be totally responsible for water consumption billed for account number _____ and for its pro rate share of sanitary, sewer and water changes.

Signed and sealed by the parties.

Witness: Crown Real Estate Holding INC

_____Landlord

Witness: CAMP HARMONY, INC_____Tenant

J&C CAPITAL, LLC    _____Tenant

JJC CAPITAL, LLC    _____Tenant

SCHOOL REALTY, LLC _____Tenant

JEROME P. AMADEO    _____Tenant

**EXHIBIT E**



# CROWN REAL ESTATE HOLDING INC.

November 6, 2018

Camp Harmony
J&C Capital, LLC
JJC Capital LLC
School Realty
Jerome Amedeo

RE: Payment Due

Mr. Amedeo,

As a follow up to the previous letter sent to you on 9/25/18, as per the agreement you entered with Crown Bank on May 16, 2018, you were required to make a monthly payment of $50,000 plus one- twelfth (1/12th) of the annual real estate taxes by the 15th of every month on the agreement.  For the month of September, you owe $19,165.31 and $59,165.31 for the month of October.  The total amount you owe as of today is **$78,330.65.** November's payment in the amount of $59,165.31 will be due on 11/15/18. As previously advised, we have also received a notice for unpaid sewer charges in excess of $20,747.84.

Please remit the amounts due to our office along with proof of payment for the unpaid sewer charges to 27 Prince Street, Elizabeth, NJ 07208, Attention: Marta Pinto **no later than 5 business days of the notice.  If you fail to make payment within 5 business days of this notice we will start eviction process.**

Should you have any questions/concerns, please contact me at 908-659-2121.

Sincerely,

Marta Pinto
AVP/Asst. to CEO/Special Asset Coordinator

27 Prince Street • Elizabeth, NJ 07208 • 908-659-2100 • Fax 908-289-1601

**EXHIBIT F**

SVSWC F 002733-17    *UNIFILED*    CHC201951033 96
Recorded in the Office of the Superior Court Clerk    Pg 1 of 10, Writ #19001987

SHERIFF'S OFFICE
SOMERSET COUNTY, NJ
RECEIVED

2019 FEB 20 PM 1: 57

Sean D. Adams, Esq. Bar Id No 004932013
HILL WALLACK LLP
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
(609) 924-0808
Attorneys for assignee, Crown Real Estate Holdings, Inc.

| | |
|---|---|
| CROWN BANK,<br><br>        Plaintiff,<br><br>vs.<br><br>J&C Capital, L.L,C., JJC Capital, L.L.C.<br>School Realty, L.L.C., and Camp Harmony,<br>Inc.,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>SOMERSET COUNTY<br><br>DOCKET NO. F-002733-17<br><br>**WRIT OF POSSESSION** |

### THE STATE OF NEW JERSEY
### TO THE SHERIFF OF THE COUNTY OF SOMERSET

WHEREAS, on December 20, 2017, by a certain Judgment of the Superior Court of New Jersey, Chancery Division, Somerset County, in an action therein pending, wherein Crown Bank, Plaintiff, J&C Capital, L.L,C., JJC Capital, L.L.C., School Realty, L.L.C., and Camp Harmony, Inc. are defendants, it was ordered and adjudged that the plaintiff, its assignee, or the successful bidder at the Sheriff's Sale, recover the possession of the lands and premises, which appurtenances described in its Complaint and any Amendment(s) to the Complaint, if any, from the following defendants: J&C Capital, L.L.C., JJC Capital, L.L.C., School Realty, L.L.C., and Camp Harmony, Inc. and any other parties or occupants holding under them, which premises are more particularly described as follows: (*See Exhibit A attached hereto*), the possession of which said lands and premises the said Defendants, J&C Capital, L.L,C., JJC Capital, L.L.C., School Realty, L.L.C., and Camp Harmony, Inc. and their successors, assignees, principals, agents, and employees have hitherto unlawfully deprived Crown Real Estate Holdings, Inc., the purchaser at the foreclosure sale by virtue of an Assignment of Bid, as appears to us of record.

Therefore, you are hereby commanded that, without delay, you cause Crown Real Estate Holdings, Inc. to have possession of said real property; and make known to the Superior Court of New Jersey aforesaid at Trenton, New Jersey the manner in which you shall have executed this writ; and have you then and there this writ, and that within six (6) months after the date of issuance you return this execution and your proceedings thereon to the Clerk of the Superior Court of New Jersey at Trenton.

SVSWC F 002733-17    01/30/2019    Pg 2 of 10  Trans ID: CHC2019S1033 96
Recorded in the Office of the Superior Court Clerk  Pg 2 of 10  Writ #19001987

WITNESS, the Honorable  Margaret Goodzeit, P.J.Ch.  , a Judge of the Superior Court at
~~Trenton~~, this  30th  day of ____January____, 2019.
Somerset

                                            /s/ Michelle M. Smith
                                            Clerk

HILL WALLACK LLP                            MICHELLE M. SMITH
Attorneys for Plaintiffs, Crown Real Estate Holdings, Inc.   Clerk of the Superior Court
                                            Signed and Sealed in the
                                            Superior Court of New Jersey
By: _____

    Sean D. Adams

Dated: January 28, 2019                     Delivered to me _____,
                                            2019 at _____ o'clock _____.m.


                                            _____
                                            Sheriff

## SCHEDULE A

### 5 Harmony Road

AS TO BLOCK 71, LOT 64:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Municipality of the Township of Warren, in the County of Somerset, State of New Jersey.

BEING KNOWN AND DESIGNATED as Lot 8 in Block 8 as shown on a certain map entitled "Map of Property Owned by the Harmonia Cooperative Colony Association, Inc., in the Township of Warren, Somerset County, New Jersey, duly filed in the Somerset County Clerk's Office on 04/10/1924 as Map No. 87-C.

NOTE: Being Lot(s) 64, Block: 71; Tax Map of the Township of Warren, County of Somerset, State of New Jersey

NOTE: Lot and Block shown for informational purposes only.

SVSWC F 002733-17
Recorded in the Office of the Superior Court Clerk   Pg 4 of 10   Writ #19001987

SCHEDULE A (cont'd)

11 Harmony Road and 13 Harmony Road

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SOMERSET, STATE OF NEW JERSEY, AND IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT, PARCEL AND LOT OF LAND LYING AND BEING SITUATE IN THE TOWNSHIP OF WARREN, COUNTY OF SOMERSET, STATE OF NEW JERSEY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF MT. HOREB ROAD, SAID POINT BEING DISTANT 100.00 FEET WESTERLY FROM ITS INTERSECTION WITH THE WESTERLY LINE OF HARMONIA AVENUE AND FROM SAID POINT RUNNING THENCE:

1. SOUTH 09 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOT 53, BLOCK 321, TAX MAP, N/F ELLIOT AND BETTA SPEER, 260.00 FEET TO A POINT; THENCE

2. SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERLY LINE OF LOT 53, BLOCK 321, N/F SPEER, 100.50 FEET TO A POINT IN THE WESTERN LINE OF HARMONIA AVENUE, THENCE

3. SOUTH 09 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 100.00 FEET TO A POINT; THENCE

4. NORTH 89 DEGREES 20 MINUTES 00 SECONDS WEST, ALONG THE NORTHERLY LINE OF LOT 51, BLOCK 321, N/F TOWNSHIP OF WARREN, 100.00 FEET TO A POINT; THENCE

5. SOUTH 09 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF LOTS 51 AND 50, BLOCK 321, N/F TOWNSHIP OF WARREN AND EDWARD SCHULLINGER, 500.00 FEET TO A POINT THENCE

6. SOUTH 89 DEGREES 20 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERLY LINE OF LOT 50, BLOCK 321, N/F SCHULLINGER, 250.50 FEET TO A POINT IN THE WESTERLY LINE OF HARMONIA AVENUE; THENCE

7. SOUTH 40 DEGREES 40 MINUTES 00 SECONDS WEST, ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 39.67 FEET TO A POINT; THENCE

8. SOUTHERLY ALONG THE WESTERLY LINE OF HARMONIA AVENUE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 470.50 FEET, AN ARC DISTANCE OF 38.55 FEET TO A POINT; THENCE

9. SOUTH 18 DEGREES 50 MINUTES 10 SECONDS WEST, STILL ALONG THE WESTERLY LINE OF HARMONIA AVENUE, 172.04 FEET TO A POINT; THENCE

10. NORTH 18 DEGREES 50 MINUTES 10 SECONDS WEST, ALONG THE SOUTHERLY LINE OF LOT 46,

## SCHEDULE A (cont'd)

BLOCK 321, 569.00 FEET TO A POINT; THENCE

11. NORTH 04 DEGREES 41 MINUTES 10 SECONDS EAST, 339.16 FEET TO A MONUMENT; THENCE

12. NORTH 01 DEGREES 15 MINUTES 39 SECONDS EAST, 375.76 FEET TO A POINT; THENCE

13. NORTH 04 DEGREES 48 MINUTES 31 SECONDS WEST, AND ACROSS A CONCRETE MONUMENT(ROAD), 174.79 FEET TO A POINT IN THE (FORMER) SOUTHERLY LINE OF MT. EDEN ROAD; THENCE

14. EASTERLY ALONG THE (FORMER) SOUTHERLY LINE OF MT. EDEN ROAD, ALONG A CURVE TO THE RIGHT WITH A RADIUS OF 531.13 FEET, AN ARC DISTANCE OF 113.97 FEET TO A POINT; THENCE

15. STILL ALONG THE (FORMER) SOUTHERLY LINE OF MT. EDEN ROAD, BEING DISTANT 50 FEET FROM THE CENTER LINE THEREOF, ON A COURSE BEARING SOUTH 88 DEGREES 40 MINUTES 40 SECONDS EAST, 388.53 FEET TO A POINT, SAID POINT BEING THE POINT AND PLACE OF BEGINNING.

EXCEPTING THEREFROM THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET AS A PERPETUAL EASEMENT FOR A PUBLIC ROAD, AS GRANTED BY DEED FROM LAWRENCE V. STEINHAUER AND AVON STEINHAUER, HIS WIFE, DATED MAY 30, 1969, RECORDED JUNE 13, 1969, IN DEED BOOK 1317, PAGE 175, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON BAR IN THE SOUTHERLY LINE OF MOUNT EDEN ROAD, 30 FEET FROM CENTER LINE AS PER COUNTY ROAD SYSTEM MAP FOR THE ACQUISANCE OF MT. EDEN ROAD, PREPARED BY HERBERT G. FISCHER, TOWNSHIP ENGINEER, DATED FEBRUARY, 1939, SAID IRON BEING LOCATED WESTERLY 105.00 FEET AS MEASURED ALONG THE SOUTHERLY LINE OF MOUNT EDEN ROAD FROM ITS INTERSECTION WITH THE WESTERLY LINE OF MINNESISA AVENUE (46 FEET WIDE) SAID BEGINNING POINT ALSO BEING THE NORTHEASTERLY CORNER TO LANDS NOW OR FORMERLY OF LAWRENCE AND AVON STEINHAUER; AND FROM SAID POINT OF BEGINNING RUNNING THENCE

1. ALONG THE NORTHEASTERLY LINE OF LANDS OF STEINHAUER, SOUTH 30 DEGREES 44 MINUTES 08 SECONDS WEST, 10.40 FEET TO A POINT; THENCE

2. ALONG A LINE 10 FEET PARALLEL WITH AND ADJACENT TO THE CENTER LINE OF MOUNT EDEN ROAD, AS PER THE ABOVE REFERENCE MAP, SAID LINE BEING THE NEW SOUTHERLY SIDE LINE OF MOUNT EDEN ROAD, NORTH 63 DEGREES 29 MINUTES 00 SECONDS WEST, 386.23 FEET TO A POINT OF CURVE; THENCE

3. STILL ALONG SAME IN A WESTERLY DIRECTION ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 575.13 FEET, AN ARC LENGTH OF 113.54 FEET TO A POINT IN THE WESTERLY LINE OF LANDS NOW OR FORMERLY OF STEINHAUER; THENCE

4. ALONG SAID WESTERLY LINE, NORTH 01 DEGREES 44 MINUTES 31 SECONDS WEST, 10.13 FEET TO AN IRON BAR AND CORNER TO LANDS OF STEINHAUER, SAID CORNER BEING 50 FEET FROM THE CENTER LINE OF MOUNT EDEN ROAD; THENCE

5. ALONG A LINE 50 FEET PARALLEL WITH THE AND ADJACENT TO THE CENTER LINE OF MOUNT EDEN ROAD, SAID LINE BEING THE OLD SOUTHERLY LINE OF MOUNT EDEN ROAD, IN AN EASTERLY DIRECTION ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 531.37 FEET, AN ARC LENGTH OF 113.97 FEET TO THE END OF A CURVE; THENCE

6. STILL ALONG THE SAME, SOUTH 88 DEGREES 40 MINUTES 40 SECONDS EAST, 348.83 FEET TO THE

## SCHEDULE A (cont'd)

POINT AND PLACE OF BEGINNING.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET PURSUANT TO A QUITCLAIM DEED FROM HOME SCHOOL REALTY, L.L.C. DATED MAY 21, 2002 AND RECORDED JUNE 3, 2013, IN DEED BOOK 5578 AT PAGE 1665 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY SIDELINE OF MOUNT HOREB ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND THE DIVISION LINE BETWEEN LOTS 65 AND 66 IN BLOCK 71, DISTANT WESTERLY, ALONG SAID SOUTHERLY SIDELINE, 100 FEET FROM THE WESTERLY SIDELINE OF HARMONY ROAD (46-FOOT WIDE LIGHT-OF-WAY) AND RUNNING; THENCE,

1. ALONG SAID SOUTHERLY SIDELINE, SOUTH 80 DEGREES 15 MINUTES 47 SECONDS WEST, 457.11 FEET TO THE WESTERLY LINE OF SAID LOT 65; THENCE,

2. ALONG SAID WESTERLY LINE EXTENDED, NORTH 11 DEGREES 20 MINUTES 01 SECONDS WEST, 16.47 FEET TO THE CENTERLINE OF THE EXISTING TRAVELED WAY OF SAID MOUNT HOREB ROAD; THENCE,

3. ALONG SAID CENTERLINE, AND ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 460.00 FEET, A CENTRAL ANGLE OF 09 DEGREES 54 MINUTES 01 SECONDS, AN ARC LENGTH OF 83.22 FEET AND A CHORD BEARING NORTH 76 DEGREES 40 MINUTES 47 SECONDS EAST, A CHORD DISTANCE OF 83.123 FEET TO A POINT OF TANGENCY, THENCE

4. ALONG THE SAME, NORTH 80 DEGREES 38 MINUTES 48 SECONDS EAST 424.80 FEET TO THE EXTENSION OF THE AFORESAID DIVISION LINE BETWEEN LOTS 65 AND 66; THENCE,

5. ALONG SAID DIVISION LINE EXTENDED, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 20.57 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 10,861 SQUARE FEET/0.2493 ACRES OF LAND AS DESCRIBED HEREIN.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE COUNTY OF SOMERSET PURSUANT TO A DEED FROM HOME SCHOOL REALTY, L.L.C. DATED MAY 21, 2002 AND RECORDED JUNE 3, 2013 IN DEED BOOK 5578 AT PAGE 5656 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY SIDELINE OF MOUNT HOREB ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND THE DIVISION LINE BETWEEN LOTS 65 AND 66 IN BLOCK 71, DISTANT WESTERLY, ALONG SAID SOUTHERLY SIDELINE, 100 FEET FROM THE WESTERLY SIDELINE OF HARMONY ROAD (46-FOOT WIDE RIGHT-OF-WAY) AND RUNNING; THENCE,

1. ALONG SAID DIVISION LINE, SOUTH 09 DEGREES 44 MINUTES 11 SECONDS EAST, 9.43 FEET, THENCE,

2. ALONG A NEW LINE THROUGH SAID LOT 66, 075.50 FEET FROM, AND PARALLEL WITH, THE CENTERLINE OF THE EXISTING TRAVELED WAY, SOUTH 80 DEGREES 38 MINUTES 48 SECONDS WEST, 414.94 FEET TO A POINT OF CURVATURE, THENCE

3. ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 650.00 FEET, A CENTRAL ANGLE OF 10 DEGREES 33 MINUTES 13 SECONDS, AN ARC LENGTH OF 49.02 FEET AND A CHORD BEARING SOUTH 75 DEGREES 33 MINUTES 33 SECONDS WEST, A CHORD DISTANCE OF 70.52 FEET TO A POINT OF TANGENCY; THENCE;

## SCHEDULE A (cont'd)

4.   SOUTH 79 DEGREES 27 MINUTES 29 SECONDS WEST, 2.52 FEET TO A CONCRETE MONUMENT FOUND IN THE DIVISION LINE BETWEEN LOTS 66 AND 67, BLOCK 71, THENCE

5.   ALONG SAID DIVISION LINE, NORTH 13 DEGREES 46 MINUTES 35 SECONDS WEST, 13.56 FEET TO THE AFORESAID MOUNT HOREB ROAD (SOUTHERLY SIDELINE); THENCE,

6.   ALONG SAID SOUTHERLY SIDELINE, NORTH 80 DEGREES 18 MINUTES 49 SECONDS EAST, 427.11 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 4,066 SQUARE FEET/0.0933 ACRES OF LAND AS DESCRIBED HEREIN.

EXCEPTING THEREFROM, THE FOLLOWING PARCEL DEDICATED UNTO THE TOWNSHIP OF WARREN PURSUANT TO A DEED FROM ROME SCHOOL REALTY, L.L.C. DATED MAY 21, 2003 AND RECORDED JUNE 3, 2003 IN DEED BOOK 5779 AT PAGE 2054 AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE EXISTING WESTERLY SIDELINE OF HARMONY ROAD (40 FOOT WIDE RIGHT-OF-WAY) DISTANT ALONG SAID SIDELINE, SOUTH 69 DEGREES 44 MINUTES 11 SECONDS EAST, 600.00 FEET FROM ITS INTERSECTION WITH THE SOUTHERLY SIDELINE OF MOUNT HOREB ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND RUNNING; THENCE

ALONG SAID HARMONY ROAD WESTERLY SIDELINE, THE FOLLOWING THREE COURSES;

1.   SOUTH 19 DEGREES 44 MINUTES 11 SECONDS EAST, 16.33 FEET TO A POINT OF CURVATURE; THENCE,

2.   ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 600.00 FEET, A CENTRAL ANGLE OF 74 DEGREES 27 MINUTES 41 SECONDS, AN ARC LENGTH OF 151.12 FEET AND A CHORD BEARING SOUTH 03 DEGREES 29 MINUTES 21 SECONDS WEST, A CHORD DISTANCE OF 152.77 FEET TO A POINT OF TANGENCY; THENCE

3.   SOUTH 86 DEGREES 20 MINUTES 30 SECONDS WEST, 59.79 FEET TO THE DIVISION LINE BETWEEN LOTS 62 AND 66.01, BLOCK 71; THENCE

4.   ALONG SAID DIVISION LINE, SOUTH 04 DEGREES 15 MINUTES 49 SECONDS WEST, 9.17 FEET; THENCE

LEAVING SAID DIVISION LINE AND ALONG A NEW LINE THROUGH SAID LOT 15, THE FOLLOWING THREE COURSES, DISTANT 9.00 FEET FROM AND PARALLEL WITH SAID EXISTING WESTERLY SIDELINE OF HARMONY ROAD.

5.   NORTH 84 DEGREES 53 MINUTES 30 SECONDS EAST, 34.59 FEET TO A POINT OF CURVATURE; THENCE,

6.   ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 591.00 FEET, A CENTRAL ANGLE OF 15 DEGREES 0 MINUTES 41 SECONDS, AN ARC LENGTH OF 151.28 FEET AND A CHORD BEARING SOUTH 03 DEGREES 29 MINUTES 21 SECONDS WEST, A CHORD DISTANCE OF 151.00 FEET TO A POINT OF TANGENCY; THENCE,

7.   NORTH 19 DEGREES 44 MINUTES 11 SECONDS WEST, 16.33 FEET TO THE SOUTHERLY LINE OF LOT 62 IN BLOCK 71; THENCE;

## SCHEDULE A (cont'd)

6. ALONG SAID NORTHERLY LINE, NORTH 88 DEGREES 15 MINUTES 49 SECONDS EAST, 5.50 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 1.013 SQUARE FEET/0.0232 ACRE OF LAND AS DESCRIBED HEREIN.

BEGINNING AT A POINT ON THE EXISTING WESTERLY SIDELINE OF LOCUST ROAD (60 FOOT WIDE RIGHT-OF-WAY) DISTANT ALONG SAID WESTERLY SIDELINE, SOUTH 03 DEGREES 46 MINUTES 11 SECONDS EAST, 266.63 FEET FROM ITS INTERSECTION WITH THE SOUTHERLY SIDELINE OF MOUNT TABOR ROAD (VARIABLE WIDTH RIGHT-OF-WAY) AND RUNNING; THENCE

1. ALONG SAID BEARING SAID NORTHERLY SIDELINE, SOUTH 84 DEGREES 44 MINUTES 22 SECONDS EAST, 108.02 FEET TO THE NORTHERLY LINE OF LOT 64 IN BLOCK 71; THENCE

2. ALONG SAID NORTHERLY LINE, SOUTH 85 DEGREES 15 MINUTES 49 SECONDS WEST, 5.50 FEET; THENCE

3. LEAVING SAID NORTHERLY LINE AND ALONG A NEW LINE THROUGH SAID LOT 66, SOUTHERLY 8.00 FEET FROM AND PARALLEL WITH THE FIRST COURSE DESCRIBED HEREIN, NORTH 03 DEGREES 46 MINUTES 11 SECONDS WEST, 108.00 FEET TO THE SOUTHERLY LINE OF LOT 65 BLOCK 71; THENCE

4. ALONG SAID SOUTHERLY LINE, NORTH 88 DEGREES 15 MINUTES 49 SECONDS EAST, 5.50 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 500 SQUARE FEET/0.0115 ACRE OF LAND AS DESCRIBED HEREIN.

THE ABOVE INTENTIONS BEING AS SHOWN ON A SURVEY MADE BY JAMES P. READY, DATED APRIL 21, 1982, AND REVISED TO MAY 23, 1977.

BEING ALSO KNOWN AS DESIGNATED FOR INFORMATIONAL PURPOSES ONLY:

LOTS 66 AND 66.01, BLOCK 71, ON THE OFFICIAL TAX MAP OF THE TOWNSHIP OF RANDOM, COUNTY OF SOMERSET, STATE OF NEW JERSEY.

### 15 Harmony Road

KNOWN and DESIGNATED as Parcel Number Twleve Section B on the map of property owned by the "Harmonie" Cooperative Colony Association, Inc., which map was duly recorded and filed in the Office of the Clerk of Somerset County, new Jersey, on the 10th day of April 1924, Map XYZ. Said parcel having a frontage of one hundred feet and being 519.77 feet deep.

The above description is in accordance with a survey and metes and bounds made by Trimble Engineering dated September 18, 2003 are attached.

Beginning at a point on the westerly side line of Harmonie Avenue, also known as Harmony Road (44' wide), said point being the common corner of Lots 62.02 and 56.01 in Block 71 as shown on the Warren Township tax map; running thence

1) Along said side line of Harmonie Avenue on a curve to the left having a radius of 537.0 feet an arc distance of 100.22 feet to a point for a corner; thence

2) N 85°00'0" W along the division line with Lot 359.00 as shown on the Warren Township tax map a distance of 559.02 feet to a point for a corner; thence

3) N 05°00'0" E along the division line with Lot 62 of said tax map a distance of 100.00 feet to a point for a corner; thence

4) S 85°00'0" E along the division line with Lot 65.01 of said tax map a distance of 571.00 feet to the point and place of beginning.

## SCHEDULE A (cont'd)

. 19 Harmony Road and 25 Harmony Road .

ALL that certain lot, tract or parcel of land and premises, situate, lying and being in the Township of Warren in the County of Somerset and the State of New Jersey, more particularly described herein.

FIRST TRACT:    BEING KNOWN AND DESIGNATED AS lots 16, 17 & 18 as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

SECOND TRACT: BEING KNOWN AND DESIGNATED AS Lot  19 IN Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

THIRD TRACT:  BEING KNOWN AND DESIGNATED AS Lot  14 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

FOURTH TRACT: BEING KNOWN AND DESIGNATED AS Lot  15 Section B as shown on a certain map entitled "MAP OF HARMONIA COOPERATIVE COLONY ASSOCIATION, INC." which map was filed in the SOMERSET COUNTY CLERK'S OFFICE on 04/10/1924 as Map No. 87-C.

Being known and designated as Lot(s) 60 & 60.01 in Block 71 on the Township of Warren Tax Map.

## SCHEDULE B

### SCHEDULE B

Limited to tangible property located on the premises known as 5 Harmony Road, Warren, NJ 07059, 11 Harmony Road, Warren, NJ 07059, 13 Harmony Road, Warren, NJ 07059, 15 Harmony Road, Warren, NJ 07059, 19 Harmony Road, Warren, NJ, and 25 Harmony Road, Warren NJ 07059 also known as Lots 60, 60.01, 62.02, 64, 66, and 66.01 Block 71 on the Official Tax Map of the Township of Warren, County of Somerset, State of New Jersey.